The People ex rel. The Press Publishing Company, Appellant, *v.* James J. Martin et al., as Police Commissioners, etc., Respondents.

Under the provision of the Election Law of 1892 (§ 61, chap. 680, Laws of 1892), which provides that the board of police commissioners of the city of New York, in selecting the papers in which to publish the list of the nominations for offices to be filled at an election, shall select those "which, according to the best information he can obtain, have the largest circulation within" the city; in making the selection the board acts judicially, and its action may be reviewed by certiorari.

The publisher of a paper not selected, claiming to have the largest circulation, has sufficient interest to institute proceedings by certiorari.

While said board may not, under the act, arbitrarily designate the newspapers without making any inquiry or effort to obtain the best information as to their circulation, but must act in good faith and seek for information, they are not bound to resort to any particular evidence or to give to the various newspaper representatives a formal hearing.

In proceedings by certiorari to review the action of said board in making such a selection, these facts appeared: Before the selection was made an affidavit was presented to the board on behalf of the relator with a request that *The World,* the newspaper published by it, should be selected, which affidavit stated that the circulation of said newspaper exceeded by many thousands that of any other newspaper published in the United States, and that it was ready upon demand to submit its books to the police commissioners in substantiation of its claims. No other com-

munication was had between the relator and the board until after the selection was made.  Thereafter relator presented to the board an affidavit to the effect that the circulation of *The World* in the city of New York exceeded by 75,000 that of the newspapers selected, and requested permission to present evidence substantiating its claim; this request the board denied, and refused to re-consider the decision made.  In their return to the writ the police commissioners alleged that in making the designation they selected the newspapers which, according to the best information they could obtain, had the largest circulation within the city.  *Held*, there was nothing in the record showing that the determination of the board was erroneous, as at the time of the designation it had been furnished with no evidence that *The World* had a larger circulation in the city than any other newspaper; that its circulation might be larger in the whole country, as stated in the first affidavit, but not as large in the city, and the second affidavit and offer came too late; that the court was bound to take the return as true, and it showed a full compliance with the statute.

*It seems*, if the return is evasive or not sufficiently full, the relator could have compelled a further return (Code Civ. Pro. § 2135), but having elected to stand upon the return as made it was to be taken as true.

Reported below, 72 Hun, 354.

(Argued April 9, 1894;  decided April 17, 1894.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made October 13, 1893, which confirmed a determination of the board of police commissioners of the city of New York, designating certain newspapers for the publication of election notices, which proceedings were brought up for review by certiorari.

The Election Law of 1892 provides for the publication of the list of candidates to be voted for at any general election. The relator is the publisher of the New York World, and in the fall of 1892 it claimed that it was one of the papers published in the city of New York in which the lists of nominations of candidates should be published as required by that law ; and on the 6th day of September an affidavit was made by its business manager, in which it was stated that the World was published in the city of New York; that it advocated the principles of the political party which at the last preceding election cast the largest number of votes in the state of New York, and that its daily circulation exceeded by

many thousands that of any other newspaper published in the United States; and the affidavit contained a statement that the relator was ready at any time, upon demand, to submit to the police commissioners or any one designated by them, in substantiation of its claims, all its books and accounts relating to its circulation. The affidavit was on the day of its verification delivered to and left with the police commissioners, with a letter signed by the business manager of the World, notifying them that it should be designated for the publication of all election notices for the reasons stated in the affidavit. From that time to the 25th day of October following, there does not seem to have been any communication between any representative of the World and the police commissioners; and on the latter day at their meeting its business manager again appeared before them and requested them to allow him to produce evidence, proving that the circulation of that paper in the city of New York was larger than that of any other daily newspaper published in the city, and that its circulation was 75,000 in excess of the Sun and the Daily News. But the board would not allow him to produce such evidence. Before he appeared there, and before the request was made by him, the board had designated the New York Sun and the New York Daily News as representing the Democratic party, and the New York Tribune and the Press as representing the Republican party.

Thereafter, on the 2d day of November, the relator applied for a writ of certiorari to review the determination of the police commissioners in designating the papers named, and in its verified petition for the writ it alleged the facts hereinbefore stated, and further, that the letter and affidavit of the relator's manager of September 6th were before the commissioners at the time of the designation of the other papers, and that no other affidavit was at that time before them; that they did not obtain the best information that they could relative to the papers having the largest circulation within the city, and that they did not obtain any such information as a board other than that furnished by the affidavit of the relator's man-

1894.]    People ex rel. P. P. Co. *v.* Martin et al.    231

N. Y. Rep.]                    Statement of case.

ager, and that none of the newspapers designated had the largest circulation within the city of New York. The commissioners made return to the writ, in which they admitted that there was left at their office in the city of New York the letter and affidavit hereinbefore mentioned, and that they designated for publication of the lists of candidates the Sun, News, Tribune and Press; and they averred that on the 25th day of October, 1892, the only written papers in regard to the subject-matter before them were the letter and affidavit before mentioned; that at the time of the passage of the resolution designating the four papers no one appeared for the relator to substantiate the statements contained in the letter and affidavit; that after the resolution designating those papers had been adopted the manager of the World requested to be heard and was heard, but did not produce any witnesses or further evidence, and they declined to reconsider their action; that in designating the papers for the publication they selected those which, according to the best information they could obtain, had the largest circulation within the city and county of New York.

Upon the affidavit upon which the writ was issued, and the return to the writ, the General Term affirmed the determination of the board of police commissioners, and this appeal is from the decision of the General Term.

*John M. Bowers* for appellant. The writ of certiorari to review will issue when the writ would have issued at common law, and the right to the writ, or the power to issue it, has not been taken away by statute, when the determination is final, and when there is no appeal from such determination to a court, or review of it by any body, or officer, and when no rehearing is expressly provided for by statute. . (Code Civ. Pro. §§ 2120, 2122.) In addition the action sought to be reviewed must be judicial. (*People ex rel.* v. *Board*, 33 Barb. 344; *People ex rel.* v. *Mayor*, 2 Hill, 9; *People ex rel.* v. *Common Council*, 78 N. Y. 33, 39; *People ex rel.* v. *McLean*, 62 Hun, 45; 1 Ld. Raym. 580; 1 Salk. 146; *Law-*

*ton* v. *Commrs.*, 2 Caines, 182; *Wildy* v. *Washburn*, 16 Johns. 49; *People* v. *Judges*, 24 Wend. 249; *People ex rel.* v. *Van Alstyne*, 32 Barb. 131.)   The court must inquire into the facts as well as to the jurisdiction, to see whether the determination was supported by evidence or was against the preponderating weight of evidence.   (Code Civ. Pro. § 2140; *In re People* v. *Board of Assessors*, 39 N. Y. 88; *People ex rel.* v. *Van Alstyne*, 32 Barb. 131; *People ex rel.* v. *Smith*, 45 N. Y. 772; *People ex rel.* v. *Eddy*, 57 Barb. 593; *People ex rel.* v. *Bd. of Police*, 39 N. Y. 506; *People ex rel.* v. *Bd. of Police*, 72 id. 415.)   In any case we submit that the court will review the determination of the inferior tribunal, even though the judgment of such tribunal is void or rescinded by it, in order that the relator's rights may be determined. (*People ex rel.* v. *Canal Board*, 7 Lans. 220; *People* v. *Judges*, 24 Wend. 249; *People ex rel.* v. *Board*, 16 Wkly. Dig. 390; *People ex rel.* v. *Jones*, 112 N. Y. 597.)   The courts, by means of certiorari, will exercise a salutary influence and superintendence over inferior jurisdictions, from whose decisions there is no appeal.   (*Lawton* v. *Comrs.*, 2 Caines, 179, 182; 1 Ld. Raym. 580.)   The board of police commissioners acting under the statute should have acted upon legal evidence as the best information it could obtain.   (*People ex rel.* v. *Troy*, 78 N. Y. 833; Code Civ. Pro. §§ 843, 854.) The relator has such a personal interest in the publication of the lists of nominations that it can maintain a proceeding in its name to review a determination designating newspapers for such publication.   (*In re Sullivan*, 55 Hun, 285.)   As it appears from the face of the return that the only evidence before the board was introduced on behalf of the relator and required the selection of the newspaper published by it for the publication of the lists of nominations, and as, by the return, no other evidence is set out from which a finding could be made, it follows that the determination of the board in designating newspapers other than that published by the relator should be annulled.   (*Mullins* v. *People*, 24 N. Y. 399; *People ex rel.* v. *Overseers of Ontario*, 15 Barb. 286;

*People ex rel.* v. *Board of Police*, 39 N. Y. 506; *People ex rel.* v. *Howland*, 61 Barb. 273.)

*D. J. Dean* for respondents. The appeal should be dismissed upon the ground that no question of practical importance is now involved in the controversy. (*People ex rel.* v. *Squire*, 110 N. Y. 666; *People ex rel.* v. *Walter*, 68 id. 403; *People ex rel.* v. *Phillips*, 67 id. 582; *Ex parte Hetz*, 111 U. S. 766.) The police commissioners in this case acted as ministerial officers and not as a judicial body, so that their action cannot be reviewed on a writ of certiorari. (*People ex rel.* v. *Jones*, 112 N. Y. 597; *People ex rel.* v. *Suprs. Queens Co.*, 131 id. 468; *People ex rel.* v. *Walter*, 68 id. 403; *I. P. Co.* v. *Harris*, 62 Iowa, 501; *Smith* v. *Yoram*, 37 id. 98; *Atty.-Genl.* v. *Mayor, etc.*, 143 Mass. 589.)

EARL, J. In the Election Law, chap. 680, sec. 61, it is provided that, at least six days before an election to fill any public office, the board of police commissioners of the city of New shall cause to be published in not less than two, nor more than four newspapers within such city, a list of all nominations for candidates for offices to be filled at such election, and that " one of such publications shall be made in a newspaper which advocates the principles of the political party that at the last preceding election cast the largest number of votes in the state; and another of such publications shall be made in a newspaper which advocates the principles of the political party that at the last preceding election cast the next largest number of votes in the state. The clerk or board, in selecting the respective papers for such publication, shall select those which, according to the best information he can obtain, have the largest circulation within such county or city. In making additional publications the clerk or board shall keep in view the object of giving information, so far as possible, to the voters of all political parties; and in no event shall additional publications be made in two newspapers representing the same political party."

The relator is right in claiming that the police commissioners in designating the newspapers act judicially; that their determination may be reviewed by writ of certiorari, and that the relator had sufficient interest to institute this proceeding; and while the time has long since passed when any decision in this matter can have any practical, efficient operation, we will, in view of the public importance of the questions involved, overlook that circumstance and proceed to the determination of the matter upon its merits upon the facts as they appear in this record.

The police commissioners cannot, under this act, arbitrarily designate the newspapers without making any inquiry or any effort to obtain the best information as to their circulation. They must act in good faith and seek for information as to the circulation of the newspapers, and in making the designation they must act according to the best information they can obtain. But they are not bound to resort to any particular evidence nor to give the various newspaper representatives a formal hearing. They can receive affidavits, examine books or make other inquiries satisfactory to them for the purpose of ascertaining which of the newspapers has the largest circulation within the city. If they are furnished with formal proof by the representatives of any newspaper, they should receive it and act upon it. If evidence, not open to suspicion or doubt or question, is furnished to them showing that any particular newspaper has the largest circulation, they should receive and act upon such evidence, giving to it its proper force and effect. In other words, they should act fairly, seeking for the best information to guide them in the exercise of their judicial discretion in the selection of the newspaper under the act. All sources of information are open to them as they are open to assessors of property for taxation who are to proceed upon diligent inquiry and the best information they can obtain. (2 R. S. [7th ed.] 990, 991, 994; *People* v. *Trustees of Ogdensburgh,* 48 N. Y. 390.)

Now, what facts have we here? At the time the police commissioners designated the newspapers they had not been

furnished with any evidence by the relator that the World had a larger circulation in the city of New York than any other newspaper. The entire circulation may have been larger than that of any other newspaper in the whole country, and yet its circulation may not have been so large in the city of New York as some other newspaper published there. The offer of the relator on the 25th of October, then to show that the circulation of the World in the city of New York was larger than that of any other newspaper, came too late, as the designation had then already been made. There is absolutely nothing in this record showing that the determination of the police commissioners was erroneous, or from which we can determine that they did not exercise their jurisdiction regularly and rightfully. We are bound to take their return as true, and in it they allege that in designating the papers they selected those which, according to the best information they could obtain, had the largest circulation in the city of New York; and thus they certified that they had actually and literally complied with the statute. If the return was evasive, or not sufficiently full, they could have been compelled, under section 2135 of the Code, to make a further return. They could have been required to return what action they took and what information they sought and obtained in reference to the circulation of the newspapers. But, instead of asking for a further return, the relator was content to stand upon the return as made. We are bound to take the return here as absolutely true. If it be false the relator has its remedy by an action against the police commissioners for making a false return, in which action it can recover its damages suffered in consequence thereof. (*People ex rel., etc.*, v. *Fire Commissioners*, 73 N. Y. 437.)

Therefore, because we cannot in this record discover any error in the proceedings or determination of the board of police commissioners, the order of the General Term should be affirmed, with costs.

All concur.

Order affirmed.