(5 App. Div. 570.)

PEOPLE ex rel. FRANCIS et al. v. CAHILL et al.

(Supreme Court, Appellate Division, Third Department. May 21, 1896.)

CITY COUNCIL—DESIGNATING OFFICIAL NEWSPAPER—RECONSIDERATION.
    Laws 1892, c. 670, tit. 3, § 9, as amended by Laws 1893, c. 575, provides that the city council of Troy shall, at its second regular meeting, as fixed by its rules, after the general election in each year, designate official newspapers, and that, if the council shall fail to make the designation "at the time and in the manner provided, then the newspapers theretofore designated shall hold over until their successors are designated according to law." Held, that the statute is not mandatory, and therefore, where the council makes a designation without first ascertaining certain facts as required by law, it may, at the next meeting, recon-

sider the matter; the rules of the council providing that the proceedings at a meeting may be reconsidered at the next meeting.

Certiorari by John M. Francis and another to review the proceedings of John F. Cahill and others, members of and constituting the common council of the city of Troy, in regard to the designation of official newspapers in November and December, 1895. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Lewis E. Griffith, for relators.

William J. Roche, for respondents.

MERWIN, J.   By section 9 of title 3 of chapter 670 of the Laws of 1892, as amended by chapter 575 of the Laws of 1893, it is provided that the common council of the city of Troy "shall, at its second regular meeting as fixed by its rules, after the general election in each year, designate not to exceed four newspapers, published in said city and having the largest circulation within its corporate limits, in which shall be published all the municipal advertisements, official notices, legal notices, and the common council proceedings.   *   *   *   The papers so designated shall be known as official newspapers.   The oaths of the publishers of said newspapers, and the business records of such newspaper offices for the three months preceding such designation, shall be required by the common council as confirmatory of the actual circulation of the said newspapers, before such designation is made by the common council.   Whenever the common council shall neglect or fail to designate official newspapers in and for said city, at the time and in the manner above provided, then and in such case the newspapers appointed and designated as official newspapers for said city at the last preceding designation shall hold over and continue to act as the official newspapers of said city until the common council shall designate their successors in accordance with the provisions of law, and shall be paid for the services rendered as such official newspapers as other claims against said city are audited and paid."   The relators are the publishers of a newspaper published in that city known as the Troy Daily Times.   That paper was one of the papers designated as official newspapers at the last designation prior to November, 1895.   The claim of the relators is that the acts of the common council on the subject in November and December, 1895, were invalid, and that, therefore, their newspaper continues to be an official newspaper, under the provisions of the act.   The second regular meeting of the common council, as fixed by its rules, after the general election in November, 1895, was on the 21st November, 1895.   At that meeting a committee of three was duly appointed to report upon the designation of official newspapers, and the meeting was regularly adjourned to the evening of November 26, 1895.   At that time the committee reported, and in pursuance of their recommendation three newspapers were designated as official newspapers, being three of the four that had

been designated at the next preceding designation. The Troy Daily Times was left out. It is not claimed that the common council were bound to name four, as the act only requires them to designate not to exceed four. It is conceded on both sides that this designation was invalid, for the reason that the business records of the newspaper offices for the three months preceding the designation were not required in accordance with the act. People v. Mead (Sup.) 2 N. Y. Supp. 114. At the next meeting of the common council, on December 5, 1895, the following resolution was offered:

"Resolved, that all actions and proceedings had by the common council at its meeting held on the 26th day of November last, in the matter of the designation of official newspapers of the city of Troy, and also the designation of newspapers then made, be and the same are and each of them is hereby reconsidered by this board."

This resolution was unanimously adopted, and the committee who, under the resolution of November 21st, had the matter in charge, were directed to obtain the confirmatory evidence required by the act, and all the information in its power on the subject, and report thereon to the common council. The committee proceeded so to do, and opportunity was given to the relators and others to present such evidence as they chose upon the subject. The report of the committee was made at a meeting of the common council on December 23d, and thereupon, in accordance with the recommendation of the committee, a resolution was adopted designating three official newspapers, being the same three that were designated on the 26th November. It is not claimed that in the proceedings in December which led to the designation of December 23d the statute was not complied with, so far as it relates to the evidence to be obtained. The relators did not present the evidence required by the act as to the extent of the circulation of their paper, so that they are not in a position to claim that their paper ought to have been designated. Their position then was, and now is, that the action of the common council on the 23d December "has no binding force in law, for the reason that its judicial functions in respect to the designation of official newspapers for the year ensuing after November 26, 1895, were terminated, and on the said 23d day of December the said common council had no jurisdiction of the subject-matter of designating official newspapers."

The common council, in designating official newspapers under the provisions of the charter, act to a certain extent judicially (People v. Martin, 142 N. Y. 234, 36 N. E. 885), and the relators therefore claim the benefit of the rule that judicial officers of special and limited jurisdiction cannot sit in review of their own orders, or vacate or annul them. People v. Wemple, 144 N. Y. 482, 39 N. E. 397. This rule has been often held to apply to justices of the peace and to arbitrators. In the case above cited from 144 N. Y., 39 N. E., it was held applicable to the comptroller of the state, on application to him, to vacate an order for redemption which had been previously granted by him after notice to the hold-

er of the tax title. He declined to vacate the order, on the ground that he had no power to do so, and the court said he acted correctly, as the statute gave him no power to vacate in such cases. It has also been held that a town board of audit has no power to audit and allow claims which have been passed upon and rejected by a prior board. Osterhoudt v. Rigney, 98 N. Y. 222. In People v. Supervisors of Broome Co., 65 N. Y. 222, it was held that a board of supervisors has power to reconsider a resolution auditing and allowing a claim against the county upon discovery of mistake or error. And it was there said that, although the action of the board on the matter was quasi judicial, still if, having jurisdiction, a wrong thing is done by fraud or falsehood or any misconception of a fact, "there is no reason in law or morals or in public policy why they may not, on discovering the error, at once correct it. There is no substantial reason for hampering such a body in its power to correct its own errors and to do right, by applying to it the technical rules which pertain to justices' courts and other inferior ʻudicial tribunals, supposed to proceed according to the course of the common law, and whose mere errors can only be corrected by a direct proceeding in review." The reconsideration in the present case was at the next meeting of the common council after the 26th November. The reconsideration at that time was in accordance with the rules of the body which had been adopted pursuant to law. It had power to determine the rules of its own proceedings. Section 2, tit. 3, c. 670, Laws 1892. The acts, therefore, in December, were but a continuation in accordance with its rules of the proceeding which was commenced in November. In the amended charter of the city (chapter 670, Laws 1892) the powers of the common council are stated and regulated by title 3, which is entitled "Legislative Department." Section 9 of this title confers the power to designate official newspapers. In section 2 is the power to determine the rules of its own proceedings. It is therefore fair to assume that the rules of the body for its procedure were applicable to its action under section 9, as well as to its action under other powers given by the same title. It is argued that the fact that the designation is good without the sanction of the mayor emphasizes the judicial character of the act. Still, as other acts, clearly not judicial, did not require such sanction (section 2, tit. 2 of the charter), this argument is not of great force.

We see no good reason why the doctrine of ·the case in 65 N. Y. should not be applied here. If so, the respondents had a right to correct the conceded error, unless the statute as to the time of the designation is mandatory. In this line it is argued that it was mandatory on the common council to make the designation on the second regular meeting after the general election, or on the day to which that meeting was adjourned, and that, therefore, the action in December is a nullity. If, as above indicated, the proceeding was regularly continued to the December meetings, no good reason is apparent for saying that jurisdiction was lost, unless the statute absolutely requires it. The contingency of a fail-

ure or neglect to designate official newspapers at the time and in the manner provided in the act is provided for in allowing the next preceding designation to hold over "until the common council shall designate their successors in accordance with the provisions of law." If the design was that the common council could not act until another year came round, it would seem as if it would have been so stated. Was the statute mandatory upon the common council to complete their action at the second meeting in November? "The intention of the legislature is the cardinal consideration in the construction of statutes, and whether a particular provision is mandatory or directory is to be determined from the language used and the purpose in view." Andrews, J., in Wuesthoff v. Insurance Co., 107 N. Y. 590, 14 N. E. 811. In general where a statute requires an official act to be done by a given day, for a public purpose, it shall be construed as merely directory in regard to the time. Ex parte Heath, 3 Hill, 43. In People v. Supervisors of Ulster Co., 34 N. Y. 272, the broad principle is laid down that:

"Where the statute directs an act to be done in a certain way, or at a certain time, and a strict compliance as to time or form does not appear to the judicial mind to be essential, the proceedings are held valid, though the command of the statute has been disregarded. The statute is then said to be directory. Sedg. St. & Const. Law, 368."

The absence of negative words restraining the doing of the official act afterwards has been held to be an important circumstance. Gale v. Mead, 2 Denio, 160; Smith, St. Const. § 670. In Cooley, Const. Lim. (6th Ed.) p. 89, it is said:

"In respect to statutes it has long been settled that particular provisions may be regarded as directory merely, by which is meant that they are to be considered as giving directions which ought to be followed, but not as to limiting the power in respect to which the directions are given that it cannot effectually be exercised without observing them."

And at page 92 it is said:

"Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper and prompt conduct of the business, and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it may still be sufficient, if that which is done accomplishes the substantial purpose of the statute."

We are of the opinion that the statute should not be construed as absolutely requiring the common council to complete their action at the November meeting. If the proceeding was continued, or, as in this case, the order reconsidered in accordance with the rules of the body, the power still remained for them to act. This view is supported by the view taken in the Mead Case, above referred to, where a designation improperly made was set aside "without prejudice to such immediate and proper designation as the charter requires." It follows that the action of the common council should be confirmed. All concur.

Determination of the common council of the city of Troy on the 23d December, 1895, confirmed, with $50 costs and disbursements to the respondents.