(3 App. Div. 103.)

In re ·CUDDEBACK.

(Supreme Court, Appellate Division, Fourth Department. March, 1896.)

1. ELECTIONS—FILING CERTIFICATE OF NOMINATION—MANDATORY STATUTE.
     Laws 1892, c. 680, § 59, as amended by Laws 1895, c. 810, providing that certificates of nomination required to be filed with the county clerk "shall" be filed within at least 25 days before the elections, is mandatory.

2. SAME—JURISDICTION OF SUPERIOR COURT OF BUFFALO.
     Laws 1895, c. 810, § 56, provides that the supreme court, or any justice thereof, shall have summary jurisdiction to review the determination of a clerk with regard to the filing of certificates of nomination. Code Civ. Proc. §§ 240, 241, give a judge of a superior city court, within his city the powers of a justice of the supreme court. *Held*, that a judge of the superior court of Buffalo may review such determination concerning certificates of nomination for city officers.

3. SAME—PROCEDURE.
     Under Laws 1895, c. 810, §§ 56, 59, which give the courts power to review the decision of the filing officer in respect to the filing of certificates of nomination, without providing how the matter shall be brought before a court or judge, a petition for a review is the proper procedure.

4. COURTS—PRACTICAL QUESTION.
     Whether the courts will decide a case involving a question which has ceased to be of practical interest to the parties depends on whether the question is one of great public importance.

5. SAME—QUESTION OF PUBLIC IMPORTANCE.
     Whether Laws 1892, c. 680, § 59, as amended by Laws 1895, c. 810, providing that certain certificates of nomination "shall" be filed within a

certain time, is mandatory, is a question of such public importance that the court in which it is raised will decide it, though it has ceased to be of practical interest to the parties.

6. APPEAL—PARTY AGGRIEVED—PUBLIC OFFICER.

   A county clerk is "aggrieved" by an order which improperly requires him to file a certificate of nomination, so as to entitle him to appeal, though he has no pecuniary interest in the matter.

Appeal from superior court of Buffalo, special term.

Application by William H. Cuddeback to compel the clerk of Erie county to receive and file a certain certificate of nomination. The application was granted, and the clerk appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Richard L. Ball and Adelbert Moot, for appellant.
William B. Hoyt, for respondent.

FOLLETT, J. The general election for this state in 1895 was held on the 5th day of November. On the 25th of September, 1895, the Democratic party, at a state convention duly held, nominated candidates for state officers to be voted for by the electors of this state, and selected a star as the emblem to designate the candidates of such party; and a certificate of such nominations, with a representation of the emblem, was duly filed in the office of the secretary of state, October 15, 1895. Primary meetings of the voters of the Democratic party were held in the various wards of the city of Buffalo, at which candidates for ward offices in said city were nominated to be voted for at said general election. Certificates of these nominations were made out in due form, and presented on the 16th of October, 1895, to the clerk of the county of Erie, who refused to file them, on the ground that they were not presented within the time prescribed by the fifty-ninth section of the election law (chapter 680 of the Laws of 1892, as amended by chapter 810 of the Laws of 1895). By the fifty-eighth section of the election law, as amended in 1895, it is first provided that certain certificates of nominations shall be filed in certain specified offices, which provision does not relate to certificates of nominations for ward offices in the city of Buffalo. Then follows, in the same section, this provision:

"All other certificates of nomination shall be filed with the clerk of the county in which the candidates so nominated are to be voted for."

It is agreed that the statute requires the certificates of nominations under consideration to be filed in the office of the clerk of the county of Erie. By the fifty-ninth section, as amended in 1895, it is provided:

"The different certificates of nominations shall be filed within the following periods before the election for which the nominations are made, to wit, * * * those required to be filed with a county clerk, * * * if party nominations, at least twenty-five days, and not more than thirty-five days; if independent nominations, at least fifteen, and not more than thirty days."

It is conceded that, excluding October 16, 1895, and including November 5, 1895, the certificates were presented to the county clerk just twenty days before, instead of "at least twenty-five days" before, the election. The learned counsel for the appellant contends that

the provision of the statute in respect to the time of filing the certificates is mandatory, and that certificates of party nominations must be filed at least 25 days before election, or not at all; while the learned counsel for the respondent contends that this provision of the statute is directory, and that county clerks may and must file certificates of party nominations, though presented within less than 25 days before election. In determining whether the provision of a statute is mandatory or directory, the end sought to be attained by the provision is always important to be considered; and, if the end cannot be effectuated by holding the provision to be directory, it must, if it can consistently with the language, be held to be mandatory. Wuesthoff v. Insurance Co., 107 N. Y. 580, 14 N. E. 811.

The statute recognizes the fact that experience has shown that independent nominations are seldom made until after party nominations have been made and discussed, and found unsatisfactory to a portion of the electors; and it is clear, I think, that the chief end sought to be attained by requiring certificates of party nominations to be filed at least 25 days before the election, and certificates of independent nominations to be filed at least 15 days before the election, was to give electors who are dissatisfied with party nominations a reasonable time in which to make independent ones, and thus secure to the voters a reasonable opportunity of voting for such persons as shall be deemed worthy of the offices to be filled. If certificates of party nominations may be filed within 20 days of an election, I see no reason why they may not be filed within 10 days, or even the day before the election, and thus deprive the electors of all opportunity of considering the qualifications of party nominees, and determining whether independent nominations should be made. By the sixty-first section, as amended in 1895, the county clerk of every county, except New York and Kings, is required to publish, at least six days before an election, in not less than two newspapers, a list of all nominations of the candidates for offices to be filled at the election; and, by the sixty-third section, county clerks, except in New York, are required to send to all town clerks and to an alderman of each ward in any city in the county, except in the city of Brooklyn, at least six days before the election, at least five printed lists for each election district in such town or ward, containing the name, residence, and place of business of each candidate nominated to be voted for in the respective towns and wards, which lists must be posted by the clerk or alderman three days before the election. By the eighty-sixth section, the county clerks of the counties, except New York, are required to provide the requisite number of official ballots for each polling place in the county, which must be delivered five days before the election, and sample ballots and fac similes of official ballots must be prepared and open to public inspection four days before the election. A further object in requiring certificates of nominations to be filed within the prescribed number of days before the election is to enable county clerks to comply with the statute by procuring the ballots and fac similes thereof, and distributing them the prescribed number of days before the election. If certificates of party nominations may be filed within

less than 25 days before the election, certificates of independent nominations may be filed within less than 15 days, and thus the whole machinery of the law will become involved in inextricable confusion. I think it is impossible to carry into effect the purpose of the present election law without holding that the statutory provision in respect to the time when the certificates of nominations must be filed is mandatory, and must be complied with, and that, after the time has passed, a county clerk has no right to receive and file certificates of nominations.

Subdivision 3, § 1, c. 40 (38 & 39 Vict., Municipal Elections Act), provided that every nomination paper should be delivered "by the candidate himself, or his proposer or seconder, to the town clerk seven days at least before the day of election." A nomination paper was delivered by the agent of the candidate to the town clerk, and the question arose whether it was a good delivery. It was held that the provision of the statute was not directory, but imperative, and that a valid delivery had not been made. Monks v. Jackson, 1 C. P. Div. 683. The act considered in the case last cited provided that "the surname and other names of the person nominated" must be contained in the nomination paper. "Robert Vicars Mather" was nominated for town councilor, and was described in the nomination paper filed as "Robert V. Mather." It was held that the description was insufficient, and that he was not legally nominated. Mather v. Brown, 1 C. P. Div. 596. In Price v. Lush, 10 Mont. 61, 24 Pac. 749, it was held that the Montana election law, requiring certificates of nominations to be filed 20 days before the election, was mandatory; and that the names of the nominees described in a certificate, filed within less than 20 days preceding the election, could not be printed on the official ballot. So far as we know, all of the cases arising under similar election laws have held the material provisions of such statutes to be mandatory, and that they must be strictly followed. The learned counsel for the respondent argued the case upon the theory that the statute simply prescribed a ministerial duty to be performed by county clerks. The act is broader, and contains rules of substantive law binding upon the conventions of political parties desiring to have the names of their nominees appear upon the official ballot, and the statute should not be nullified upon the theory that it enacts simply a mode of procedure, instead of rules of positive law.

Some minor questions remain to be considered.

By section 56, as amended in 1895, it is provided:

"The supreme court or any justice thereof, within the judicial district, or any county judge within his county, shall have summary jurisdiction, upon complaint of any citizen, to review the determination and acts of such officer, and to make such order in the premises as justice may require."

By sections 240 and 241 of the Code of Civil Procedure, a judge of the superior city court within his city is given the powers of a justice of the supreme court; and so, I think, the judge had jurisdiction to make the order.

Under section 56, above quoted, courts and judges have no original jurisdiction in respect to the filing of certificates of nomination, the power vested in them being simply to "review" the decisions of

the filing officer. The statute not providing that the questions shall be brought before the court or a judge by appeal, by certiorari or in any particular manner, I think that it was competent to review the question by a motion made on a petition filed.

Section 1356 of the Code of Civil Procedure provides that an appeal may be taken to the appellate division from an order affecting a substantial right, made in a special proceeding by a special term or a trial term of the supreme court, or by a justice thereof, and the order in this proceeding may be reviewed by an appeal therefrom. It is urged that, because the election has passed, this appeal should not be decided on the merits, but should be dismissed, upon the ground that the question is no longer a practical one. It is difficult to extract from the reported cases in this state a definite rule as to when an action or proceeding should be dismissed, because the question involved has ceased to be a practical one.

In People v. Squire, 110 N. Y. 666, 18 N. E. 362, a mandamus was dismissed on the ground that the question involved had ceased to be of practical importance; and a like decision was made in Re Manning, 139 N. Y. 446, 34 N. E. 931.

In People v. Martin, 72 Hun, 354, 25 N. Y. Supp. 775, affirmed 142 N. Y. 228, 36 N. E. 885, a determination was reviewed upon certiorari, though the time had passed when relief could be granted. It was said in that case:

"While the time has long since passed when any decision in this matter can have any practical efficient operation, we will, in view of the public importance of the questions involved, overlook that circumstance, and proceed to the determination of the matter upon its merits, upon the facts as they appear in this record." 142 N. Y. 234, 36 N. E. 885.

In Re Madden, 148 N. Y. 136, 42 N. E. 534 (a case arising under the election law), the court said:

"The election having been held, the decision of the question is of no practical importance in the particular case. But the courts in the first and second departments have reached opposite conclusions upon the question, and a final decision seems to be required to prevent embarrassment in the future from conflicting judicial decisions."

Whether courts will decide a case involving a question which has ceased to be of practical interest to the parties seems to depend upon whether the question involved is one of public importance. The question in this case is one of great public interest, affecting the rights of all of the electors in this state, and, I think, the courts should determine it.

It is urged that the county clerk is not aggrieved by the order, and cannot appeal therefrom. I know of no authority, and I doubt if there is one, which denies to a public officer the right to institute proceedings for the review of an order commanding him to do an official act, which he deems to be a violation of the statutes of the state. The fact that he has no pecuniary interest in doing, or in not doing, the act, is of no importance as affecting his right of appeal. The order should be reversed, and the decision of the county clerk should be affirmed, with costs.

Order reversed, and the decision of the county clerk affirmed, with costs. All concur.