THE PEOPLE OF THE STATE OF NEW YORK ex rel. LEONARD S. SPIRE, Appellant, *v.* THE GENERAL COMMITTEE OF THE REPUBLICAN PARTY OF ERIE COUNTY, Known as the Republican Organization of Erie County, Respondent.

*Elections — a member of a political organization may make copies of the enrollment books — appeal involving questions of public interest — heard, although ineffective in the particular case.*

Where an appeal to the Appellate Division in an election matter involves questions of public interest, it will not be dismissed simply because the time has passed when the rights of the parties to such appeal can be affected by its decision.

A member of the Republican organization of Erie county, in the State of New York, is entitled to make a copy of enrollment books containing the names of the members of the party qualified to vote at the next primaries, that being included in the right to an "inspection," where, in so doing, he is not taking unnecessary time or interfering with the right of any other member of the party to examine such books.

ADAMS and WARD, JJ., dissented.

APPEAL by the relator, Leonard S. Spire, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 15th day of September, 1897, denying the relator's motion for a peremptory writ of

mandamus allowing the relator " to inspect the enrollment. books of the Republicans of Erie County, * * * and to make such transcripts therefrom as he might be advised."

*Simon Fleischmann,* for the appellant.

*Tracy C. Becker* and *Fred J. Blackmon,* for the respondent.

HARDIN, P. J.:

The court held in *Matter of Cuddeback* (3 App. Div. 103), viz. : " An appeal will not always be dismissed because the question is no longer a practical one. Notwithstanding the fact that an election has been held and a decision of the question involved cannot affect the result of that election, yet where the point at issue is one of public interest, affecting the rights of all the electors of the State, the courts will determine it." Following the doctrine there laid down, it seems that we ought not, in this case, to dismiss the appeal because the question here involved is as much a matter of public interest as the question involved in the case from which the quotation has been made.

The enrollment was made for the benefit of the Republican party. The relator was a member of that party and sought the information which the enrollment would afford him. While he was consulting the books and gathering from them the information which he, as a member of the Republican party. was entitled to, he was interrupted and prevented from the completion of his efforts. He, in effect, was denied the full privileges of " an inspection." (*Cotheal* v. *Brouwer,* 5 N. Y. 562.) The denial was not put upon the ground that he was taking unnecessary time or interfering with the rights of any other member of the party to examine the books, but upon the assertion that he had no right while inspecting to make a copy of the list of names he found on .the enrollment. Such denial seems to have interfered with the rights and privileges of a member of the party in whose interest the enrollment was made. (*Mutter* v. *Eastern & Midland Railways Company,* 59 L. T. Rep. 117; S. C., 38 Ch. Div. 92.) In that case Lord Justice LINDLEY, in delivering judgment, said that an examination of the authorities had led him to the conclusion that, speaking generally, a right to take copies is always treated as incidental to a right to inspect.

PEOPLE ex rel. SPIRE *v.* GENERAL COMMITTEE. 341

App. Div.]    Fourth Department, February Term, 1898.

"When the right to inspect and take a copy is not expressly conferred, the extent of such right depends on the interest which the applicant has in what he wants to copy, and on what is reasonably necessary for the protection of such interest." (See, also, *Nelson v. Anglo-American Land, Mortgage & Agency Company,* 75 L. T. Rep. 482; cited in 31 Am. Law Rev. 916, 917.) The Special Term might, therefore, have properly awarded a mandamus requiring the defendant to allow the relator a further examination and inspection of the enrollment.

These views would seem to lead to the conclusion that the Special Term improperly denied the writ, and that its order should be reversed.

Follett and Green, JJ., concurred; Adams and Ward, JJ., dissented.

Adams, J. (dissenting):

The defendant is the political organization in the county of Erie of one of the two principal parties of this State, and as such it has duly adopted certain rules and by-laws for its government, and presumably for the furtherance of the principles of the political party which it represents.

During the summer of 1897 the defendant, in pursuance of such rules, had caused to be made enrollment books containing the names of all the members of the party who had been registered and who were entitled to vote at the primaries to be soon thereafter held in the city of Buffalo. These books contained the names of about 34,000 electors, and when completed they were placed in the custody of the defendant's officers at the local headquarters of the party. One of the defendant's rules provided that "these books shall at all times be open to the inspection of any Republican."

On or about the 11th day of September, 1897, the relator, who was a Republican elector, in company with two other Republican electors, called at the defendant's headquarters and asked for permission to inspect the enrollment books, and especially those relating to the fifth and sixth districts of the twenty-fourth ward. In compliance with such request the books were handed to the relator and his associates by the defendant's secretary, and an opportunity was afforded them to inspect the same. Availing themselves of this

342   PEOPLE ex rel. SPIRE v. GENERAL COMMITTEE.

Fourth Department, February Term, 1898.          [Vol. 25.

opportunity, the relator and his associates undertook to make a transcript of the names appearing upon the books which they were inspecting, and after having the same in their possession for this purpose for the period of an hour and a half the defendant's secretary demanded the books and refused to allow any further inspection thereof for the purpose of making such transcript. The relator thereupon applied for a peremptory writ of mandamus, and from the order denying such application this appeal is brought.

The sole reason given by the relator for desiring to inspect and transcribe the defendant's enrollment books is that the party primaries were called for the twenty-eighth day of September, and that he wished an opportunity to determine whether all the electors were enrolled who were entitled to vote at such primaries, and also whether there had been any fraudulent enrollment of names upon the books.

The time for holding these primaries having long since passed, it is manifest that no practical result can follow a determination of the question which the relator desires to have reviewed, and for that reason the appeal ought, perhaps, to be dismissed. (*People ex rel. Board of Education* v. *Grace,* 1 N. Y. Supp. 661; *Matter of Woodworth,* 64 Hun, 522; *Reynolds* v. *Everett,* 67 id. 294; *Matter of Madden,* 148 N. Y. 136.) But inasmuch as the question is thought by a majority of my brethren to possess some public interest, and, therefore, to call for a determination within the rule adopted by this court in *The Matter of Cuddeback* (3 App. Div. 103), I will state briefly my reasons for dissenting from the prevailing opinion.

The relator's application for a peremptory mandamus was founded upon his own affidavit, in which he stated that after he and his associates had been engaged in the inspection of the defendant's enrollment books, and in transcribing the names therefrom, for the space of an hour and a half, the defendant's secretary stated to them that he would not permit any further inspection for any purpose. This was met by a counter affidavit made by George D. Emerson, the defendant's secretary, in which he denied that he refused to allow the relator a further inspection of the books, and averred that he only refused to permit him to transcribe or copy the contents thereof. By persisting in his application for a peremptory writ, after having

been advised of the defendant's contention, the relator admitted the truth of every statement contained in the opposing affidavit (*People ex rel. O'Sullivan* v. *N. Y. Law School*, 68 Hun, 118), and consequently we are confined to such statements in our examination of the question under consideration.

This being the case, the most that can be claimed in support of the relator's contention is that he was not permitted to retain the custody of the defendant's enrollment books for the purpose of transcribing the same, and it is to be observed that this claim is not accompanied by any charge of bad faith.

These books, which were designed ostensibly to furnish satisfactory proof of the qualification of electors who might desire to vote at the party primaries which were about to be held, were doubtless in a certain sense the property of the party; that is, every person calling himself a "Republican" had an undoubted right, under the rules of the organization, to a reasonable inspection of them at all times, but, nevertheless, the books were placed in the custody of the officers of the organization, and those officers, as such custodians, were thereby invested with some discretionary power respecting the use to which the books should be put, as well as with some responsibility for their safe-keeping.

Had the relator been denied a reasonable opportunity to inspect the books, that would unquestionably have been such a violation of one of the defendant's rules as would have justified interference by the courts; or were there any evidence that the defendant had acted in bad faith, or from any improper motive in refusing to allow the relator to transcribe the contents of the books, the remedy invoked in this proceeding might be applicable; but it seems that there were 155 of these books, and that it took three persons an hour and a half to transcribe the names from one or two of them. It is quite apparent, therefore, that if the relator had been permitted to insist upon retaining their custody until all the names had been copied, he would possibly have prevented other parties equally interested from any inspection of them whatever. In these circumstances I do not see how it can be said, even upon the assumption that the right of inspection, generally speaking, involves the right to make copies, that the defendant's refusal was an improper exercise of the discretionary power with which its officers were invested, or that, unac-

companied by any charge of bad faith, it affords sufficient ground for granting the relief asked for. (*People ex rel. Harris* v. *Comrs. of the Land Office,* 149 N. Y. 26.)

The order appealed from should, therefore, in my opinion, be affirmed.

WARD, J. (dissenting):

The general committee of the Republican party of Erie county, called the " Republican organization," is a voluntary organization created for party purposes without judicial functions or powers, and not created by any statute, and there is no express authority given by the statute for the courts to interfere with its proceedings or determinations.

The learned counsel for the appellant cites sections 52 and 53 of the Election Law (Chap. 909, Laws of 1896), providing that political primaries shall be presided over and conducted by officers selected in the manner prescribed by the rules of the political party holding such primaries, and that no person shall be qualified to vote at such primaries unless he shall possess such other qualifications as shall be authorized by the regulations and usages of the political party holding the same. Making a list or enrollment of the members of a political party for the purpose of preparing for its primaries and the mode of doing so, is neither prescribed nor condemned by statute, and I entertain great doubt whether the courts can supervise the action of these voluntary political committees in regard to the enrollment of their voters, but this point is not raised in the briefs presented upon this appeal, and I will consider the question as though the courts had the power claimed in the premises.

The respondent has adopted certain rules for the enrollment of the Republican voters of the county of Erie. The rules are broad and liberal, and full opportunity is given for the enrollment of every voter in the party. On or before the first day of June in each year an enrollman is selected by the committee in each district for making an enrollment of the Republican voters therein. The names of these enrollmen are published in the Republican daily papers in the city of Buffalo, with a notice of the street and number at which an enrollment will be made of the Republican voters of the district, and the rules are published for the enrollment for primary meetings and

PEOPLE ex rel. SPIRE *v.* GENERAL COMMITTEE.   345

App. Div.]   Fourth Department, February Term, 1898.

require that "each enrollman in each district shall forthwith make an enrollment of the Republican voters of the district in duplicate upon two different books by placing thereon the names and street address of all Republican voters residing in the district so far as the same are known to him or upon information received from any known Republican either in person or by written communication." The enrollman shall, on June fifteenth, deliver one of the books to the secretary of the committee, and the other book is to remain in the hands of the enrollman until the first day of July following. "During the interim from June 15th to July 1st names of Republican voters not enrolled may be added to the list upon either enrollment book on the personal application only of the voter entitled to be so enrolled to the secretary at the headquarters of the general committee or to the enrollman in charge of the enrollment book of the district or at the place designated in the public notice given by the secretary."

On the first of July the enrollman delivers his book to the secretary, and the secretary then proceeds to have placed upon each of the books all the names which appear upon the other so that the two books will correspond. They are signed by the secretary, and " the books shall then remain in his (the secretary's) custody until the day previous to holding the primaries, when they shall be delivered to the several enrollmen in whose hands they were originally placed, and they shall have them at the places of holding the primaries for the use of the officers of such primaries. The day following each primary meeting each enrollman shall deliver back to said secretary both of said enrollment books. These books shall at all times be open to the inspection of any Republican."

After the first day of July, and until and including the sixth day preceding the primary meeting, any Republican not enrolled can be enrolled upon taking certain proceedings before the committee. The caucuses are usually held in September or October, so that ample time is afforded previous to the primaries under the rules of the committee to enroll every Republican voter in the county of Erie. The record does not disclose any complaint against the committee of unfairness, fraud or any partiality for candidates, cliques or factions in the Republican party. We must assume for this purpose that the

committee fully and fairly represented the whole, party in its work of enrollment and preparation for the primaries.

The relator, on the 11th of September, 1897, together with two other Republicans, called at the headquarters of the committee and asked the secretary for the enrollment books of the fifth and sixth districts of the twenty-fourth ward for inspection.   The secretary handed the books to these gentlemen, and they not only inspected the books, but transcribed names therefrom for about an hour and a half, when the secretary, concluding that they had had time enough to make such inspection, resumed the possession of the books.   The primaries were to be September 28, 1897, and the relator and his friends had two weeks under the rules to inspect the lists at proper times consistent with the rights of other voters and place any missing names upon the list.   As shown in the opinion of Judge ADAMS, the opposing affidavit of Mr. Emerson, the secretary, must be taken as true in this proceeding.   That affidavit, verified the 15th of September, 1897, states : " The primary meetings of the said Republican party will be called and held within the said county not later than October 8th next for the purpose of nominating candidates to be voted for at the next ensuing election, and that the said enrollment books are very much in use by the said committee and by Republican voters, and frequent references have to be made to them, and they are almost constantly in use at this time ; that there are one hundred and fifty-five of said enrollment books and in the neighborhood of thirty-four thousand names thereon, and that to permit the said relator and others at this time to have the custody thereof for the purpose of transcribing the same would lead to great confusion and embarrassment, and would greatly delay and hinder the work of the said committee and of this deponent in the proper discharge of the duties devolving upon them under the rules of the said Republican party."

The affidavit further attacks the good faith of the relator and his friends, and in effect denies that they wanted such inspection for the purpose of determining whether all the Republican electors entitled to be enrolled were enrolled, and whether there was any fraudulent enrollment of names upon the books, and alleges that they desired to procure such names in the interest of candidates for office.

It is apparent that if these three gentlemen could use the enrollment

books indefinitely or for such a length of time as they might desire to transcribe the names, the same privilege would belong to each and every of the 34,000 Republican voters in Erie county, and that if this privilege was accorded to all who might apply, the committee would be unable to discharge its duty properly; and it must follow that a discretion rests in the committee having charge of these books as to the extent to which they are to be used by any one or more of the individual voters.

The appellant's counsel lays much stress upon the fact that the secretary refused to permit the transcribing of the names from the book after the hour and a half's inspection, and the claim is that inspection means the right to copy the names from the books, and he cites *Cotheal* v. *Brouwer* (5 N. Y. 562) as sustaining this contention.

I do not understand that the word "inspection" covers the right to copy from or take away any portion of the thing inspected. "Inspection" is derived from a Latin word, *inspicere*, to look into. (1 Bouvier's Law Dict. 725.)

Webster (Edition of 1849) defines "inspect" to mean "to look on, to view or oversee for the purpose of examination; to look into; to view and examine for the purpose of ascertaining the quality or condition of a thing; to view and examine for the purpose of discovering and correcting errors, as to inspect the press or proof sheets of a book."

The same definitions are given in the Imperial Dictionary.

The Code of Civil Procedure and our rules of practice recognize the distinction between inspection and the taking of a copy.

Section 803 of the Code provides for an inspection and copy or permission to take a copy.

Rule 14 of the General Rules of Practice provides that application may be made in the manner provided by law to compel the production and discovery, or inspection with copy, of books, etc.

The case of *Cotheal* v. *Brouwer* (*supra*) does not sustain the appellant's contention. In that case the plaintiff was a stockholder in a private corporation. The statute provided that the books of the corporation should be open to examination by every stockholder for thirty days previous to an election of directors. The officer in charge of the books refused to permit the plaintiff to take a copy or memorandum of the names of the stockholders. It was held that

this stockholder was entitled to make this memorandum. The trial judge charged that the stockholder had a right, not only to inspect the books, but to take copies of the names.

The distinction between the simple right of inspection and the right to take copies and memoranda was observed through the case, but this being a business corporation, in which the stockholder had a pecuniary interest in knowing who the other stockholders were, it was held that under the word "examination" the plaintiff had the right contended for.

The Republican committee of Erie county is not a corporation nor, in any sense directed by statute regarding what privileges it shall accord to the voters as to the examination of its books. It has made simply a regulation that the voters may inspect the books, but has not made a regulation that any voter, or any number of voters, can deprive the committee of the use of its books for such length of time as the voters may choose for the purpose of copying the contents of the books.

I think the court at Special Term, in its discretion, upon the record here presented, made a proper disposition of the motion before it, and the order appealed from should be affirmed, with ten dollars costs and disbursements.

Order reversed, with costs.