(108 App. Div. 271.)

## In re HALPIN.

(Supreme Court, Appellate Division, First Department. November 2, 1905.)

1. ELECTIONS—DECISIONS OF BOARD—JUDICIAL REVIEW.

Section 56 of the election law, (Laws 1896, p. 922, c. 909) expressly authorize the Special Term to summarily review a decision of the board of elections relating to the construction and validity of a certificate of nomination, and to make such order in the premises as justice may require.

2. SAME—APPEAL.

An order of the Special Term, made under section 56 of the election law (Laws 1896, p. 922, c. 909), reviewing a decision of the board of elections relating to the construction or validity of a certificate of nomination, is appealable.

3. ELECTIONS—CERTIFICATE OF NOMINATION—TIME OF FILING.

Sections 58 and 59 of the election law (Laws 1896, p. 927, c. 909), providing that certificates of party nominations for county offices of the county of New York shall be filed with the board of elections at least 25 days and not more than 35 days before the election, is mandatory, and certificates of original nominations must be filed within the prescribed time.

4. SAME—REASSEMBLY OF CONVENTIONS—SUBSTITUTED NOMINATIONS.

Under section 66, subd. 1, of the election law (Laws 1896, p. 931, c. 909), providing that it shall not be lawful for a committee of a political party to nominate the candidate of another party or independent body to fill a vacancy, but, when a candidate of one party is nominated and placed on the ticket of another party or independent body, such nomination must be made at the time and in the manner provided for making original nominations, a political party cannot reassemble in convention after the expiration of the statutory period within which it may properly convene, and at the request of a candidate, made after the expiration of the time within which such candidate can keep his name off the official ballot by declining the nomination, substitute in place of such candidate a person who has been duly nominated as an independent candidate for the same office.

Appeal from Special Term, New York County.

Application by William Halpin to review the acts of the board of elections of New York. From an order denying his application, under section 56 of the election law (Laws 1896, p. 922, c. 909), to review a decision in writing made by the board of elections of the city of New York relating to "the construction, validity, or legality" of a certificate of nomination for the office of district attorney, purporting to have been made by the Republican county convention of the county of New York and tendered to said board for filing on the 30th day of October, 1905, and declining to file said certificate or to place the name of the nominee therein specified on the official ballot in the column under the official emblem of the Republican Party, petitioner appeals. Affirmed.

The original meeting of the Republican county convention was duly held, pursuant to regular call, on the 13th day of October, 1905, and Charles A. Flammer, who was duly qualified to be a candidate, was duly nominated for the office of district attorney; he having received 247 of the total number of 256 votes cast for that office, and William Travers Jerome having received the other 9, and their names as candidates having been duly presented to the convention, and no others. Nominations were duly made for all county offices to be filled at the coming election. A resolution was duly

adopted appointing a committee with authority to fill vacancies, and the convention thereupon adjourned, subject to the call of the chair. A certificate of these nominations in due form was duly filed with the board of elections on the same day. The Republican county convention was reconvened on the 27th day of October, 1905, pursuant to a call of the chairman, and a quorum of the delegates was present. A letter from Mr. Flammer, without date, declining the nomination, was presented and read. Thereupon the said convention reconsidered its former action, and upon motion, unanimously adopted, the secretary was directed to, and did, cast one vote in behalf of William Travers Jerome for the office of district attorney of the county of New York; and his nomination was certified in due form to the board of elections, which declined to receive or file the same or place Mr. Jerome's name on the official ballot in the place and stead of the name of Mr. Flammer. Mr. Flammer has not notified the board of elections, in the form or manner or within the time prescribed by section 64 of the election law (Laws 1896, p. 930, c. 909), that he declines the nomination.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, CLARKE, and LAUGHLIN, JJ.

Henry W. Taft, for appellant.
Theodore Connoly, for respondent.

PER CURIAM. There is no controversy over the facts. The appeal presents only questions of law. The Special Term was expressly authorized by statute to review summarily the decision of the board of elections "and to make such order in the premises as justice may require" (Election Law, Laws 1896, p. 922, c. 909, § 56) ; and the order of the Special Term is appealable (Matter of Emmet, 150 N. Y. 538, 44 N. E. 1102; Matter of Mitchell, 81 Hun, 401, 30 N. Y. Supp. 962; Matter of Cuddeback, 3 App. Div. 103, 39 N. Y. Supp. 388). By virtue of the provisions of section 58 of the election law, certificates of nominations for county offices in the county of New York must be filed with the board of elections. Section 59 of the election law prescribes the time, specifying a maximum and minimum period before election within which certificates of both party and independent nominations "shall be" filed. With respect to party, as distinguished from independent, nominations for county offices in the county of New York, it provides that the certificates "shall be filed within the following periods before the election for which the nominations are made." Then follows a provision that those required to be filed with the board of elections shall be filed "at least twenty-five and not more than thirty-five days." The last action of the Republican county convention was taken 14 days after the original nomination, and within 11 days of the election, and the certificate was tendered for filing within 8 days thereof.

Section 64 of the election law prescribes the manner in which a nominee may decline a nomination. As to the office in question, it provides that the name of a party nominee shall not be printed on the official ballot if he notifies the board of elections within "at least twenty days" before election, in writing signed by him and duly acknowledged, that he declines the nomination. Section 66 provides among other things, that a vacancy in nominations caused by declination or by death, or where the nominee is found to be disqualified to hold the office, may be filled by a committee appointed as prescribed in sections 56 and

57, and contains no express provision authorizing the filling of such vacancies by a convention. Section 57 relates to independent nominations, and provides that the certificates "may designate upon its face one or more persons as a committee to represent the signer thereof for the purposes specified by section 66 of the act." Section 56 of the act relates to party nominations, and provides that they "can only be made by a convention or by a duly authorized committee of such convention of a political party," and that a certificate of nomination filed pursuant to that section "may upon its face appoint a committee of one or more persons for the purposes specified" in said section 66. It further provides that, when the nomination is made by a committee, the certificate of nomination must contain a copy of the resolution appointing the committee.

As has been seen, Mr. Flammer, the first nominee of the Republican county convention for the year 1905 for the office of district attorney, did not within the time prescribed therefor by section 64 of the election law, and has not since, so far as shown by the record before us, declined the nomination in the manner or form prescribed by the statute. Therefore the question as to whether the provisions of the statute limiting the time within which party nominations for office may be declined and new nominations made to fill the vacancy are directory or mandatory is not squarely presented for decision. We are unanimously of opinion that the most favorable view of the case for the petitioner that could be taken on the facts is to regard the last action of the Republican county convention in nominating Mr. Jerome as an original nomination, and the proceedings of the convention appear to have been shaped with a view to laying a basis for that contention. Viewed in that light, it is as if the convention had not been called or had failed to meet and make a nomination in time to permit the filing of the necessary certificate within the time prescribed by the statute. This presents the question as to whether the statute prescribing the time within which certificates of party nominations are required to be filed are mandatory or only directory.

A decision of a court of co-ordinate jurisdiction (Matter of Cuddeback, 3 App. Div. 103, 39 N. Y. Supp. 388), precisely in point, directly involving a construction of the provisions of the former election law not distinguishable from those now under consideration and with respect to the time within which a party nomination certificate must be filed, and holding that the statute is mandatory and that the nomination was not filed in time, is relied upon in opposition to the motion. That case was decided by unanimous vote of the five members of the Fourth Department of this court nearly 10 years ago. During this long period its authority has never been questioned. We have no power to overrule it; but we are asked to disapprove and decline to follow it. The trend of judicial construction of similar statutes in other jurisdictions is in the same direction. The Legislature has frequently amended the election law, and the very sections in question since that decision was announced and presumably known and understood by most, if not all, the members of both houses. It is fair to assume that, if the construction placed upon those similar provisions of law was not in accordance with the wishes of the people and the will of the Legislature, some change in

phraseology clearly indicating an intention that they should remain directory would have been made. In the circumstances disclosed by the record, we are asked, in the interest and in furtherance of the wishes of a vast number of electors, members of one of the great political parties, to strain the language of the statute and make its phraseology bend and yield to a construction that will enable any party entitled to make a party nomination to defer calling its convention or making a nomination or filing a certificate thereof at least until the very last moment before the proper officers are required to publish the list of nominations made by all parties and independent nominations as well, if not until the last moment to enable the printing of the official ballots.

It seems clear to us that such a construction would thwart the plain will of the people as manifested by their representatives in the provisions of the election law, definitely limiting the period within which party nominations may be made to a specified number of days before election, longer or shorter according to the nature of the office or the extent of the political division of the state in which it is to be filled, and expressly prescribing a still shorter period in every case, with the exception of town officers in the county of Erie, for independent nominations. Section 59, Election Law. As pointed out in Matter of Cuddebach, supra, the legislative intent is that the electors shall have a reasonable opportunity, after regular party nominations are made and announced, to ascertain the qualifications and fitness of the candidates presented for their suffrages by the respective parties, to enable them, if they so determine, to place opposition candidates in the field by independent nominations. That this will of the people would be frustrated if party nominations should not be made until the time for publishing the list of all nominees, independent as well as party nominations, is clear. The uncertainty as to what party nominations would be made might result in many independent nominations that would not be made if party nominations were timely announced as prescribed in the statute. All the disastrous consequences of such a judicial ruling may not be foreseen; but it is evident that confusion and litigation would ensue that would not only complicate the voting, but might endanger the validity of elections. We have endeavored to show that it cannot be regarded as a statutory declination of a nomination and the filling of such a vacancy, and that, considered as an original nomination, the certificate was filed too late.

The learned counsel for the petitioner very properly declined to rest his case upon any specific ground. One theory remains to be considered, which is the claimed emergency in which the party finds itself placed by its nominee manifesting a disinclination to remain a candidate after having been regularly nominated and having accepted and entered upon his canvass, and after the time for him to decline under the statute and for the vacancy to be filled or to make an original nomination had passed. As we understand the argument of the learned counsel for the petitioner, he contends that these facts present a situation neither contemplated nor provided for by the statute, and therefore constitute a casus omissus, and justify the court in making and promulgating an appropriate rule of law to fit the case and carry the legisla-

tive intent, not expressed, into effect.   We think the course suggested is fraught with great danger.   We cannot peer into the future and foresee all conditions that may arise, and the various phases in which, by certain exigencies, cases may be presented for a construction of the election law that may justify or require a strained construction of the statute to prevent the disfranchisement of electors or enforce the just claims of political parties or candidates.   We shall, therefore, refrain from expressing any opinion on whether, in any emergency, the court would indulge in so-called judicial legislation, and, if so, what circumstances would constitute such emergency.   We are all agreed that no such emergency is now presented.   There has been no fraud or accident to prevent the filing of a certificate of nomination duly and timely authorized by the convention, and there has been no neglect or refusal on the part of any public board or official to perform a statutory duty. After having been duly and regularly nominated, a candidate has asked the convention which nominated him to permit him to withdraw after the expiration of the time within which he could keep his name off the official ballot by declining, and the convention has seen fit to favor his recommendation and substitute the name of another in his place who is already on the ballot, having been duly nominated as an independent candidate for the same office, and we are asked to approve of this course in the face of the fact that it is expressly forbidden by subdivision 1 of section 66 of the election law, which provides as follows:

"When no nomination shall have been originally made by a political party, or by an independent body for an office, or where a vacancy shall exist, it shall not be lawful for any committee of such party or independent body authorized to make nominations, or to fill vacancies, to nominate or substitute the name of a candidate of another party or independent body for such office; it being the intention of this act that when a candidate of one party is nominated and placed on the ticket of another party or independent body, such nomination must be made at the time and in the manner provided for making original nominations by such party or independent body."

If we should decide that a convention may be assembled after the expiration of the statutory period, and, on the request or with the consent of a nominee, make a new nomination, we would likely soon be confronted with claims that the convention, without such request or consent, could reassemble at any time before election and reconsider its action for any reason satisfactory to itself.   In either case, the door would be open to bribery and fraud.   Candidates might be improperly influenced to request or consent to have their nominations revoked, and conventions might be hastily and on short notice reassembled, without actual notice to many of the delegates or when it would be impossible for them to appear, and improper influences might be secretly exerted to prevail on those who were expected to appear to reconsider their action and favor another who could not have been nominated at the time the convention originally assembled, and a nomination then made when it would be too late for electors not favorably disposed toward the nominee to make an independent nomination.   The original convention, as authorized by statute, appointed a committee to fill vacancies in nominations.   In the obscure state of the statutory law with respect to the powers of a nominating convention, after appointing

a committee to fill vacancies in nominations, and realizing that there may be danger at times that a committee might fail to perform its duty or might cease to represent the will of the party, we shall also refrain from expressing any opinion on the question as to whether the convention became functus officio upon adjourning subject to the call of the chair. We are, however, of opinion that it was clearly functus officio when it reassembled after the time for filing original nominations or nominations to fill vacancies caused by declinations had expired.

It follows, therefore, that the order should be affirmed.