---

(25 Misc. Rep. 80.)

### In re McDONALD.

(Supreme Court, Special Term, Albany County.   October, 1898.)

1. INDEPENDENT NOMINATIONS — FILING CERTIFICATE—REVIEW OF PROCEEDINGS.
   The hearing before a justice or a judge of a summary proceeding, under Laws 1896, c. 909, § 56, to review the decision of the officer with whom a certificate of nomination is filed, as to its validity or construction, should be confined to the papers used before the officer whose decision is to be reviewed.

2. SAME—FILING CERTIFICATE NUNC PRO TUNC.
   Laws 1896, c. 909, § 57, in regard to independent nominations, provides for a single certificate containing the signatures of 50 electors from each county in the state. A certificate containing 50 signatures from every county in the state except Ulster county was presented to the secretary of state on the last day for filing such nominations. He refused to accept and file it. The paper from Ulster county was alleged to have been lost. A week later, a paper bearing the necessary number of signatures from Ulster county, but not purporting to be a duplicate of the alleged lost paper, was presented to be filed together with the other certificate. Held not a proper case for the court to compel the secretary of state to allow the certificate, as finally fixed, to be filed nunc pro tunc as of the former date.

3. SAME—MANDATORY STATUTE.
   The provision of the election law requiring certificates of independent nominations to be filed at least 25 days before the election is mandatory, so that the secretary of state has no right to receive and file any certificate after such time.

At chambers. Application of Henry M. McDonald to review the determination of John Palmer, secretary of state, in refusing to file

·an independent certificate of nomination for state officers in the name of the Chicago Platform Democracy. Decision affirmed.

Herbert R. Limberger (Jacob L. Ten Eyck, of counsel), for Henry M. McDonald.

Amasa J. Parker, Jr. (James W. Eaton, of counsel), for various signers of the certificate, in opposition.

Calvin E. Keach, in pro. per., as chairman of the Chicago Platform Democracy.

· James A. McCormick, Dep. Atty. Gen., for John Palmer, secretary of state.

CHESTER, J. (orally). My duty in this matter seems to me entirely plain. The only decision of the secretary of state before me for review is that bearing date October 21, 1898, and is attached to the moving papers. In that decision or determination of the secretary, he says that:

"A certificate containing the names of fifty-seven citizens of Ulster county, duly verified October 20, 1898, and purporting to represent the candidates for state officers of the Chicago Platform Democracy, was presented to me for filing, in connection with affidavits and exhibits, on the 21st day of October, 1898, and a demand made to have such certificate filed nunc pro tunc as of the 14th day of October, 1898; * * * and that I declined to comply with said demand."

The secretary states further in his decision that:

"A demand was also made upon me for the filing of fifty-nine certificates for each and every county in the state other than Ulster, which said certificates are in my possession, and were left with and offered to me for filing on the 14th day of October, 1898, which complied with the law, except so far as they are affected by the Ulster county certificate; and I also refused to comply with that demand."

This decision was made by the secretary yesterday, and the correctness of it is the only question for me to review upon this application; and my determination must be confined to the papers used before the secretary, and upon which his decision was based. In re Fairchild, 151 N. Y. 359, 45 N. E. 943. For this reason, I have excluded all other papers and affidavits offered to be read on this hearing. It appears by the papers that about 11 p. m., on the 14th day of October, 1898, which was the last day under the law for filing certificates of independent nominations in the office of the secretary of state, Mr. Scanlon appeared at that office with a certificate, or a paper which he claimed was a certificate, of nomination on behalf of the Chicago Platform Democracy. The paper or certificate contained over 6,000 names in all, and contained more than 50 signatures from each county, with the exception of Ulster, and with Fulton and Hamilton regarded as one county. The paper was retained by the secretary, but was not placed on the files of his office. There is no claim here, and nothing in the papers to show, that the alleged certificate contained 50 signatures from Ulster county, as required by law.

The law with reference to independent nominations provides (section 57) that:

"Nominations made as provided by this section shall be known as independent nominations, and the certificate whereby such nominations · are made, shall be known as an independent certificate of nomination. Independent nominations of candidates for public office to be voted for by all the electors of the state can only be made by 6,000 or more voters of the state; provided, however, that in making up such number at least fifty electors in each county of the state (the counties of Fulton and Hamilton to be considered as one county) shall subscribe to the certificate provided for in this section. * * * Independent nominations shall be made by a certificate subscribed by such electors, each of whom shall add to his signature his place of residence, and make oath that he is an elector and has truly stated his residence. The making of the said oath shall be proved by the certificate of the notary or other officer before whom the said oath is taken, and it shall be unnecessary for an elector who has subscribed a certificate of nomination as herein provided, to' sign any affidavit as to the matters to which he has made oath as aforesaid. * * * The signatures to the certificate of nomination need not all be appended to one paper." The Election Law (Laws 1896, c. 909, § 57).

The law provides for a single certificate, not for as many certificates as there are counties in the state. It requires the combination of the signatures from all the counties, in a single certificate, to make a compliance with the law. So that if a paper was presented to the secretary of state on the 14th day of October, for filing, which contained no signatures from Ulster county, or which contained less than 50 signatures from that county, properly verified, there was no valid certificate presented upon that date to him, and therefore he was not required by law to file it.

The claim is made here that upward of 50 signatures of electors from Ulster county had been obtained to the certificate; that the paper from that county was properly sworn to by these subscribers, and their oaths properly proven by the certificate of a notary; and that the portion of the certificate relating to that county was, on the night in question, wrongfully destroyed before it reached the secretary's office, and for that reason it could not be attached to the certificate and filed with the balance of it. There is no legal proof in the papers to support this claim. In the affidavit of Jay W. Forrest, he says, in substance, that he was told by John N. Clair that the certificate was duly signed by over 50 voters of the county of Ulster, and was correct and all right, and complied with the statutes; and he further says that he was told by William B. Brennier, mayor of Kingston, that the certificate was all right, and complied with the law. Forrest does not claim that he ever had it in his possession, or that he ever examined it before it was destroyed by Clair, as he claims. This is purely hearsay, and cannot be taken as proof. The case is devoid of further evidence on the subject. But, if we assume that what Forrest says he was told by these men was true, that would be simply the expression of their opinion that the paper was all right. It was for the secretary, and not for them, to determine the conclusion of law as to whether or not it was all right. The law places that duty upon him in the first instance, and he was not bound to take any other person's conclusion with reference to it. There is no pretense or proof that the destroyed paper ever reached the secretary's office. He never had the opportunity, therefore, to make a determination as to its validity. He was simply required to pass upon the effect of its absence as related to the

question of the validity of the certificate from all the other counties.

It appears here that, after the 14th day of October, several efforts have been made to procure other signatures from Ulster county. A second paper is alleged to have been procured, which has not been before the secretary, and has not been used here. A third paper or portion of a certificate is attached to the papers on this application. This bears date the 20th day of October. There is no pretense that it is a duplicate of the alleged lost paper. In fact, it is admitted that it is not a duplicate, and the claim is that, in the nature of things, a duplicate could not be procured. So that the certificate, so far as it relates to Ulster county, was signed subsequent to the 14th of October, verified subsequent to that time, and presented to the secretary of state on the 21st; and he is then asked to take that paper together with the papers carrying the signatures from the other counties in the state, which were left with him on October 14th inst., and to file them all nunc pro tunc as of that date, as the certificate of nomination for state officers of the Chicago Platform Democracy. The time within which certain acts are required to be done under the election law is an essential and all-important element in the orderly conduct of nominating and electing public officers. To permit a departure from the law in this respect would lead to the greatest confusion, and to the subversion of the plain purposes of the law. The provisions of the statute with respect to the time of filing the certificates are clear. The certificate in question here, being for independent nominations, was required to be filed, if at all, "at least twenty-five, and not more than forty, days" before the election. The election being appointed for November 8th, the last day for filing was October 14th. Election Law, § 59. These provisions are mandatory, and must be complied with, and, after the time has passed, the secretary has no right to receive and file any certificate. In re Cuddeback, 3 App. Div. 103, 39 N. Y. Supp. 388. I do not doubt that in a proper case the court or a justice has the power to direct the filing of a certificate nunc pro tunc, but the facts proven here do not, in my opinion, justify such an order in this case.

The proof here shows conclusively that no valid certificate was presented to the secretary within the time when he could lawfully file it. His decision in refusing to file the certificate after the 14th of October, 1898, was therefore correct, and should be affirmed. Ordered accordingly.