MANNING and others, Petitioners, vs. YOUNG and others, Board of Election Commissioners of Milwaukee County, Respondents.

*February 28, 1933.*

*William H. Timlin* of Milwaukee, for the petitioners.

*W. A. Zabel,* district attorney of Milwaukee county, and *Oliver L. O'Boyle,* assistant district attorney, for the respondents.

*Giles F. Clark* of Milwaukee, *amicus curiæ.*

The following opinion was filed March 2, 1933:

Per Curiam. At the time of the hearing and decision it was stated that an opinion would be filed in the above entitled matter. Pursuant to that statement the following

statement of the grounds and reasons for the decision of the court is filed:

The first question raised was a question of law involving the sufficiency of the filing made by petitioners. In this state the nomination of candidates for office is governed by ch. 5, Stats. Sec. 5.01 (6), Stats., is as follows:

"This title [being title II, 'Elections,' which includes ch. 5] shall be construed so as to give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to comply with some of its provisions."

The right of the petitioners to go upon the primary ballot is conferred by sec. 5.26 (6), the material part of which is as follows:

"Provided, that nomination papers proposing candidates for judicial offices, members of the board of supervisors or for school board directors in the cases provided for in subsection (8), shall be filed not more than forty nor less than twenty days before the primary therein provided for."

By sub. (8), which is referred to, it is provided that, where three or more candidates are proposed by nomination papers, the names of those which shall appear upon the ballot shall be determined at the March primary.

While it is true that sec. 370.01 (24) does not include holidays, we have no difficulty in reaching the conclusion that under the legislative mandate for a liberal construction of the provisions of ch. 5, where the last day for filing nomination papers falls upon a legal holiday a filing on the day subsequent is sufficient.

In the construction of laws relating to primaries and elections, it must not be forgotten that the law does not confer the right which is regulated, the right being conferred by the constitution and is often said to be inherent in our form of society. Originally, as a matter of political theory, every citizen had a right to appear at an election as a candidate

for any office for which he was qualified. The exercise of this right resulted in the formation of political parties, nominations by convention, and that in turn, for sundry reasons, gave way to nominations by the filing of nomination papers. The right regulated is the original right of any qualified person to become a candidate. In the construction of election laws we cannot therefore lose sight of the fact that the regulations imposed are not conditions upon compliance with which the right comes into being, but are regulations intended merely to regulate the exercise of the right in an orderly way. In the present year, under such regulatory laws, the primary election in Milwaukee county is to be held on March 14th. The section of the statutes already quoted requires persons desiring to become candidates for the offices named to file their nomination papers not more than forty nor less than twenty days prior to the day of the primary; that is, not before February 2d and not after February 22d. The sole and only purpose of fixing a minimum time within which nomination papers must be filed was to enable the election commissioners to prepare the official primary ballot. To that end the legislature might prescribe such time as in its judgment seemed reasonable and appropriate. It was stated upon the argument that something like 350,000 ballots would be required and that it would take ten days in which to print them after they were prepared.

From an early day it has been held that the laws designated for the regulation of the right of the elector are merely directory, while laws prescribing qualifications or conditions are in the main imperative. *State ex rel. Bancroft v. Stumpf,* 21 Wis. *579. For an extended discussion of the nature and extent of the right of a citizen to vote at an election, see *State ex rel. McGrael v. Phelps,* 144 Wis. 1, 128 N. W. 1041.

We find no express provision of the statutes prescribing what shall happen when the last day of the period within

which *nomination* papers may properly be filed, falls on a legal holiday. Sec. 370.01 (24) provides:

"The time within which an act is to be done as provided in any statute, when expressed in days, shall be computed by excluding the first day and including the last, except that if the last day be Sunday it shall be excluded." . . .

In business transactions it is the ordinary practice, when the last day for performance falls upon Sunday, to accept performance if it is done upon the next succeeding business day.

Sec. 117.03, relating to negotiable instruments, provides:

"When the day of maturity falls upon a Sunday, or a holiday, the instrument is payable on the next succeeding business day."

By statute the rule applicable to negotiable instruments is made applicable to sales (ch. 121), stock transfers (ch. 183), bills of lading (ch. 120), uniform warehouse receipts (ch. 119). See 2 Williston, Contracts, § 1210. It is true that the mere declaration that a certain day shall be a legal holiday does not indicate an intent on the part of the legislature to assimilate the status of that day to the status of Sunday. In *A. G. Spalding & Bros. v. Bernhard,* 76 Wis. 368, 44 N. W. 643, it was said that although a day was declared to be a legal holiday, in the absence of any prohibition no act performed on that day will be held illegal, so it was held that the approval by a court commissioner on a legal holiday of the bond of an assignee was valid because not in contravention of sec. 2576, Revised Statutes, which provided: "No court shall be opened or transact any business . . . on any legal holiday."

There is nothing in sec. 256.17, Stats., making February 22d or Washington's birthday a legal holiday, which forbids the performance of any act which might be legally performed on a lay day. There is a provision, sec. 59.14, with respect to when county officers shall keep their offices open, which is

as follows: "All such officers shall keep such offices open during the usual business hours each day, Sundays and legal holidays excepted."

We have therefore the legislative mandate enjoining us that the statute shall be so construed as to give effect to the will of the electors if that can be ascertained from the proceedings, notwithstanding informality or failure to comply with some of its provisions; the fact that when the last day for the performance of an act falls on Sunday where the term is expressed in days, it is common business practice in part, pursuant to statute, to accept performance on the next secular day; along with the statutory provision that the offices of all county officers shall be closed on a legal holiday and a construction of the statute by the board of election commissioners that the filing on the next secular day would be sufficient. It would seem without resort to the more general principles of law that a reasonable construction of a directory statute would require us to hold that the filing by the petitioners on February 23d was a substantial compliance with the statute and that to hold otherwise would be to defeat the will of the electors by a narrow or strict construction of the statutory provision. That such construction of the statute is to be avoided, see *In re Bayne,* 69 Misc. 579, 127 N. Y. Supp. 915.

Under the wording of the statute, candidates have under ordinary circumstances twenty-one days within which to file papers. If it be held that, where the last day is a legal holiday, papers may not be effectively filed on the next succeeding business day, then the period is reduced to twenty days. The question is which shall give way: the right of the nominee to file or the right of the Board of Election Commissioners to have a full twenty days in which to prepare the ballot. It is obvious that every consideration supports the conclusion that the right of the nominee to file is the superior right.

One other matter deserves consideration. As heretofore pointed out, the exercise of the right of franchise is one of

the most fundamental in our form of government. Where that right is regulated the regulation prescribed by legislative authority should, when and where possible, be so construed as to insure rather than defeat the exercise of the right. In this case some forty thousand electors in the manner prescribed by law indicated their will that certain names should appear upon the primary ballot to be voted on at the election to be held March 14th. The Board of Election Commissioners gave public notice that a filing of nomination papers on February 23d would be a sufficient filing under the statute. The petitioners filed in accordance with the interpretation placed upon the law by the Board of Election Commissioners. A suit was brought by a private citizen for the purpose of enjoining the Board of Election Commissioners from placing the names of the petitioners upon the ballot although they were admittedly in all other respects legally entitled to such a place. The petitioners here were not made parties to that proceeding, were given no opportunity to appear and be heard. As nominees of the electors their rights represented the rights of the electors who signed their respective nomination papers. To deny the petitioners their right under the law and so defeat the will of the electors who signed the nomination papers without making petitioners parties to the proceeding, is in effect practically to deny them justice and a day in court. It is perfectly obvious from the allegations contained in the complaint in the action in which Adamson was plaintiff that there was a serious defect of parties defendant. As a result of that procedure this court upon a hearing of this petition was confronted with the fact that if it took jurisdiction the Board of Election Commissioners might be subject to a peremptory writ of *mandamus* issued out of this court requiring them to place the names on the ballot and a like order of the circuit court for Milwaukee county prohibiting them from doing so. There seemed to be no way in which

the matter could be dealt with by way of the exercise of supervisory control of this court over the proceedings of the circuit court. This court, however, took jurisdiction for the same reason that it did in *State ex rel. Barber v. Circuit Court for Marathon County,* 178 Wis. 468, 190 N. W. 563. Assuming that the petitioners here had the right to appeal although not parties to the action in the circuit court for Milwaukee county, before the appeal could be taken and brought to a hearing here, the time within which effective relief could be granted would be long past. Under such circumstances the circuit court should of its own motion, before making a determination of the character involved in this case, require the real parties in interest to be brought before it. Had that been done we would not have the situation where private parties whose rights are involved are compelled to invoke the original jurisdiction of this court by reason of a determination of the circuit court made in a proceeding where they had no opportunity to be heard.

In this connection it should be observed that Adamson, the plaintiff in the circuit court action, was not a candidate and had no private interest of his own which he sought to have vindicated. The grounds upon which he sought to invoke jurisdiction of the circuit court are set out in paragraph 20 of the complaint as follows:

"That plaintiff, as an elector of said county, has and is entitled to a preference in voting for candidates for said offices and all other electors are entitled to a preference in their votes for said candidates; that if the names of those candidates who have not filed their nomination papers within the time required by law are placed upon the ballots so to be voted at said primary, this plaintiff will be denied and deprived of his right of preference and the effect of it by the diversion of votes from the candidate of plaintiff's choice to other candidates whose names are not entitled to be placed on said ballots and thereby plaintiff will be done irreparable harm and injury."

At common law courts of equity decline jurisdiction of matters of a political character for the reason that such courts wield the strong force of injunction exercised through a single individual and oftentimes upon an *ex parte* hearing. 10 Ruling Case Law, p. 342, § 92 and cases cited.

This court held in *Kendall v. Frey* (1889) 74 Wis. 26, 42 N. W. 466, that—

"The general principle that equity possesses no power to revise, control, or correct the action of public, political, or executive officers or bodies is, of course, well understood. It never does so at the suit of a private person, except as incidental and subsidiary to the protection of some private right, or the prevention of some private wrong, and then only where the case falls within some acknowledged and well-defined head of equity jurisprudence."

Plaintiff alleges no facts which bring him within this well established rule. Such right as he sought to vindicate, if any right whatever was involved, was the right of those candidates who filed before February 22d to have a lesser number of opponents than they would have if those who filed on February 23d had their names placed upon the ballot. The plaintiff was deprived of no right, he could vote for the man of his choice, and the appearance of other names upon the ballot in no way impaired that right. It is a general rule of law that a court of equity will not exercise its jurisdiction in political matters except in cases where authority is conferred upon it by statute so to do or in cases where the plaintiff alleges that he has been deprived of some right guaranteed to him either by the constitution or the statute. In the case at bar, if the Board of Election Commissioners had refused to place the petitioners' names upon the ballot, they would have been entitled to the aid of a court of equity because the statute had conferred upon them the right to have their names so appear. That is quite a different matter than the interest of a private citizen upon whom no rights have been conferred by statute to invoke the jurisdic-

tion of a court of equity in order to vindicate a public right in which he has no greater interest than any other citizen. 9 Ruling Case Law, p. 987, note 10 and cases cited.

In view of these considerations and for the reason stated in *State ex rel. Barber v. Circuit Court for Marathon County, supra,* and *Petition of Price,* 191 Wis. 17, 210 N. W. 844, this court felt obliged to take jurisdiction as the only available means of doing justice in the matter. It may not be improper to observe that in this court as well as in other courts where it is sought to invoke the equity power of the courts in relation to matters political, the situation should be approached by the court with caution, and upon its own motion it should see that all parties in interest are before it. Had it appeared that the plaintiff Adamson had any private interest in the controversy and was entitled to maintain the action, this court should not have proceeded without having him before it. It appears, however, from statements of counsel that, although notified of the proceeding to be had before this court, he did not appear and made no response.

As already appears, the mandate of the court has been entered of record.