STATE EX REL. OAKS, Respondent, vs. BROWN, Appellant.

*May 13—May 23, 1933.*

572

574

For the appellant there was a brief by *Bouck, Hilton, Kluwin & Dempsey* of Oshkosh, and oral argument by *Ray C. Dempsey.*

For the respondent there were briefs by *Barber, Keefe, Patri & Horwitz,* attorneys, and *W. Mead Stillman* of counsel, all of Oshkosh, and oral argument by *Mr. Frank B. Keefe* and *Mr. Stillman.*

The following opinion was filed June 6, 1933:

ROSENBERRY, C. J. The determination of the issues raised on this appeal presents a very narrow question. Sec. 63.13, Stats., provides:

"Any city which shall have adopted the provisions of this chapter may abandon the same and reorganize under the provisions of chapter 62 [aldermanic form] or 64 [manager form], or under a home rule charter by proceeding in accordance with the provisions of section 63.01."

Sec. 63.01 provides:

"Any city of the second, third or fourth class may reorganize under the provisions of this chapter, either by enactment of a charter ordinance or by a petition and referendum election as provided by section 66.01 of the statutes. Such petition and election shall be governed by subsections (2) to (5) of section 10.43."

Sec. 66.01 defines a charter ordinance as "Any ordinance which enacts, amends or repeals the whole or any part of the charter of a city or village, or makes the election mentioned in subsection (4) of this section." Such an ordinance must be adopted by a two-thirds vote and is subject to a referendum.

The commission council having adopted no charter ordinance, the procedure followed in this case was that prescribed by sec. 10.43, entitled "Direct legislation." Sub. (1), (2), and (3) of sec. 10.43 relate to the form, circulation, and sufficiency of the petition. Sub. (4) provides:

"Such proposed ordinance or resolution shall thereupon either be passed without alteration by said common council within the thirty days next following the date of the clerk's final certificate, or it shall be submitted without alteration

by said council to the electors of the city at the next regular election, if one be held not less than forty days after such date, otherwise at the next succeeding regular election; but the council may by a three-fourths vote of the members-elect order it submitted at a special election called for that purpose at any time prior to said next succeeding regular election."

Sub. (5) provides that the city clerk shall, "not more than twenty nor less than five days before the election, cause the ordinance or resolution submitted to the voters to be printed in at least two, but not to exceed four, daily newspapers published in the city, or, if there shall be but one daily newspaper published in said city, then in such daily newspaper and in one or more other daily or weekly newspapers of general circulation therein."

The defendant contends that the proceedings to adopt the charter ordinance are invalid for the following reasons: (1) The city clerk failed to call a special election as provided by sec. 10.40 of the Statutes; (2) that the city clerk failed to give notice of the special election as required by sec. 10.36 (3); (3) that the city clerk failed to publish the charter ordinance, as required by sec. 10.43 (5).

It must be conceded that the city clerk did not in terms comply with the statutory provisions in the foregoing respects. The relator contends, however, that the publication of the proposed charter ordinance in full as a part of the council proceedings had on January 5th and on March 23d, which publications were on January 6 and March 24, 1932, and the publication of the ordinance *in extenso* as a part of the official ballot of the proposed charter ordinance, which official ballot was published on March 28th and April 4th in the Daily Northwestern, was a sufficient compliance with the requirements of sec. 10.43 (5).

With respect to the failure of the city clerk to give notice of the election as required by sec. 10.40 (1), which incorporates sec. 10.36, the relator urges: (1st) that sec. 10.36 provides "that the failure to give such notice shall not in-

validate such election." That, as a matter of fact, the publication of Exhibit G, which was a facsimile of the official ballot, on March 28th and April 4th, which was over the signature of the city clerk and the county clerk, and upon which the proposed charter ordinance was printed in full, and the time and place of voting in each ward was indicated, was a sufficient notice, although the first publication was only eight days prior to the date of the election.

To this contention the defendant replies that what the city clerk did was done pursuant to other requirements of the law and was not intended to be a compliance with the statutes respecting the calling and holding of special elections. We should have great difficulty in sustaining the relator's contention if we were required to determine this question upon general principles of law as declared in prior decisions of this court. *Janesville Water Co. v. Janesville,* 156 Wis. 655, 146 N. W. 784; *Hubbard v. Williamstown,* 61 Wis. 397, 21 N. W. 295; *State ex rel. Manitowoc v. Green,* 131 Wis. 324, 111 N. W. 519.

In addition to the provision contained in sec. 10.36 to the effect that failure to give notice of the election shall not invalidate the election, we are also met with sec. 5.01 (6)—

"This title shall be construed so as to give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to comply with some of its provisions."

The words "This title" refer to title II, Elections, chapter 5, Nomination of Candidates for Office; chapter 6, Electors and General Elections; chapter 7, Elections to Fill Vacancies; chapter 8, Election of Justices, Judges and School Superintendents; chapter 9, Election of Senators and Representatives in Congress, and Electors of President and Vice-President; chapter 10, Conduct of Local Elections; chapter 11, Voting Machines and Absent Voting; and chapter 12, Corrupt Practices Relating to Elections. This section was

referred to in *Manning v. Young,* 210 Wis. 588, 247 N. W. 61.

Sec. 5.01 (6) came into the statutes by way of ch. 451 of the Laws of 1903, an act to provide for party nominations by direct vote, and was part of sec. 1 of that act and read:

"This statute shall be liberally construed, so that the real will of the electors may not be defeated by any informality or failure to comply with all provisions of law in respect to either the giving of any notice or the conducting of the primary or certifying the results thereof." ,

The decision in *Janesville Water Co. v. Janesville, supra,* was announced April 9, 1914. By ch. 381, sec. 2, of the Laws of 1915 the provision was amended to read as at present and was thereby made applicable not only to primary elections but all elections held under the provisions of title II. Whether the decision in the *Janesville Case* had anything to do with the amendment we are unable to say. The rule announced in this state was quite apparently somewhat out of line with the law as announced in other states. The rule applied here was a very strict one and might often serve to defeat the will of the electors even where that will was plainly declared. See *People ex rel. Williams v. Cicott,* 16 Mich. 283; *Adsit v. Board of State Canvassers,* 84 Mich. 420, 48 N. W. 31, 11 L. R. A. 534; 9 Ruling Case Law, p. 992 and cases cited; Dillon, Municipal Corporations, 197, note 3, and cases cited.

Sub. (6) is not as clear in its language as it might be. What is involved in most election contests, as in this, is not construction of the statute under which the proceeding is had, but whether or not there was a compliance with the statute, and, if a failure to comply, whether such failure rendered the proceedings nugatory.

It is apparent, however, that sub. (6) means something more than construction of the statute itself. Failure to com-

ply with a statute may not involve a construction of its provisions. It is quite obvious that the legislature intended to say that if from the proceedings had pursuant to the statute the will of the electors has been in fact ascertained, that will shall be given effect notwithstanding the informality of procedure or failure to comply with all of the requirements of the statute.

It should also be pointed out that sec. 5.01 (6) affords no excuse for the non-performance of prescribed official duty. If it had been sought to enjoin holding of the election on April 5, 1932, on the ground that the ordinance had not been published or notice given as required by law, an entirely different question would be presented. It is manifest that sec. 5.01 (6) applies only after the holding of the election and the will of the electors has been manifested. When the matter has been allowed to proceed to that point, the will of the electors is to be given effect even though there may have been informalities or in some respect a failure to comply with the statute. It is also apparent that there are so-called jurisdictional requirements which must be complied with or the proceeding never reaches the election stage. It is considered under the statutes referred to that when a petition has been filed which complies with the provisions of the statutes, the necessary jurisdictional step has been taken. If the city clerk, for instance, should refuse to certify a petition properly signed and presented, he could be compelled to do so, and so each of the various steps could be compelled by a proper proceeding to that end. The only discretion allowed any officer or body after the filing of the petition is the power conferred upon the council to determine when and how the matter shall be submitted.

Title II deals with political action. It prescribes the procedure by which the officers of government are chosen and political decisions reached. It merely regulates what is under

our government an inherent right of the citizen. The power of the legislature in the premises is very great, and sub. (6) is a provision to the effect that a court shall not set aside the ascertained result of political procedure if in fact the will of the electors can be ascertained.

There is in the record a great deal of evidence in regard to the population of the city of Oshkosh, the number of qualified electors residing therein, the number of persons who voted at the charter ordinance election, the number of persons who voted at the April 4, 1932, election, and the number of persons who voted in other elections and upon other questions. To set out this evidence would extend this opinion to an unwarrantable length. Stated in a general way, it appears that there was a spirited campaign going on almost continuously from October 31 down to April 4, 1932, with reference to the respective merits of the commission and aldermanic form of government. Nearly four thousand signatures were procured by those who circulated the petition for submission. There was a very heated campaign between Mr. Oaks, the relator, and one Skole for the office of councilman. There were in the city of Oshkosh in April, 1932, 17,248 registered voters. About 800 persons not registered voted on filing affidavits. The vote cast April 5, 1932, was the largest ever cast at any election held in the city of Oshkosh up to that time. The referendum with respect to the repeal of the blue laws was submitted, upon which 8,141 votes were cast. Voting in Oshkosh is by voting machine. Every voter as he entered the booth was confronted by the voting machine, a facsimile of which was twice published in the official newspaper.

While some questions can be raised with respect to the election, such as that many people might have refrained from voting because legal notice had not been given, and other matters of that kind, it is considered that the trial court was

fully justified in reaching the conclusion which it did. The court said:

"The court finds that all the material allegations of the complaint are true. It is considered that the proceedings taken for submitting to the voters the question of returning to the aldermanic form of government from the commission form and the election held on April 5, 1932, pursuant thereto, substantially complied with the law; . . . that in and by said election it was lawfully determined by the electors and the people of said city to abandon the commission form of government in the aforesaid city and return to and re-establish therein the aldermanic form of government."

We recognize the fact that in affirming this judgment we are holding that a substituted compliance with the terms of the statute is sufficient. An election was held, a notice was given, the ordinance was published, and the form of the question did present the issue in fact. This is held sufficient although the notice given was not that required by ch. 10, the ordinance was not published in the manner and form as required by statute, and no formal call for the election was made.

The defendant also contends that the form in which the question was submitted was misleading and failed to inform the voter sufficiently with respect to the matter upon which the voter was to express his opinion. Upon the face of the voting machine the ordinance appeared in full.

*"Proposed Charter Ordinance.*

"A charter ordinance of the city of Oshkosh to eliminate chapter 63 of the Wisconsin Statutes for 1929 from the charter of the city of Oshkosh, and to add to and incorporate in said charter, chapter 62 of the Wisconsin Statutes for 1929.

"The council of the city of Oshkosh do ordain as follows:

"Section 1. Chapter 63 of the Wisconsin Statutes is hereby repealed from the charter of the city of Oshkosh.

"Section 2. Chapter 62 of the Wisconsin Statutes for 1929 is hereby incorporated into and made a part of the charter of the city of Oshkosh.

"This ordinance shall take effect in sixty days after its passage by the commission council and its publication; if not passed by the commission council, it shall take effect immediately after receiving in its favor a majority of the votes cast by the qualified electors of the city of Oshkosh."

To the right of the ordinance was printed "Question 6." Underneath this, one lever was marked "Yes," one "No," and underneath the lever "Shall the ordinance be adopted?"

It is contended that the form appearing in *State ex rel. Coyle v. Richter*, 203 Wis. 595, 234 N. W. 909, should have been followed. In that case it was recited in the title that it was an ordinance to abandon the commission form of government and to return to one aldermanic. It is quite true that from an inspection of the ordinance itself a reader, unless he knew the contents of ch. 62 and ch. 63, would be unable to determine what purpose would be achieved by the adoption of the ordinance. He would know only that the adoption of the ordinance would make a change in the charter of the city.

The statute does not specify in what form the question should be submitted. Sec. 66.01 (2) (b) provides:

"Every charter ordinance which amends or repeals the whole or any part of a city or village charter shall designate specifically the portion of the charter so amended or repealed, and every charter ordinance which makes the election mentioned in subsection (4) of this section shall designate specifically each enactment of the legislature or portion thereof, made inapplicable to such city or village by the election mentioned in subsection (4) of this section."

The ordinance as submitted was literally a compliance with the provisions of this statute. The first ordinance prescribing the form of the question adopted by the commission council, after setting out the ordinance at length, provided:

"For commission government. Against ordinance (——). For the above ordinance (——)."

To this there was apparently some objection, for on the next day the commission council adopted the following, after other recitals:

"Whereas, the placing of such question upon the voting machine . . . would be confusing to the voters, and

"Whereas, the council desires that the matter be presented as plain as possible,

"Therefore be it resolved: That the proposed ordinance be printed at length upon each voting machine, and that the question presented shall be: 'Shall the ordinance be adopted?' Yes (——).   No. (——)."

Under the circumstances and in view of the vast amount of publicity and the directions given to voters both by public authority and privately, there is no ground for saying that the voters were in any way misled.

*By the Court.*—Judgment affirmed.   (Mandate entered on May 23, 1933.)