In the Matter of the Application of EDGAR J. LAUER, Petitioner, for a Mandamus Order Directing the BOARD OF ELECTIONS IN THE CITY OF NEW YORK to Accept for Filing Certain Certificates of Nomination of Candidates for the Office of Justices of the Supreme Court, First Judicial District, and the Minutes of the Convention.*

Supreme Court, New York County, October 7, 1933.

* Affd., 240 App. Div. 818; 262 N. Y. 416.

*Abraham S. Gilbert* [*Samuel L. Seabury* and *Abraham S. Gilbert* of counsel], for the petitioner.

*John J. Dooling,* for the Democratic county committee of New York county.

*Arthur J. W. Hilly* [*Russell Lord Tarbox* of counsel], for the board of elections.

*Weil, Gotshal & Manges,* for Samuel I. Rosenman.

*McManus, Ernst & Ernst* [*Terence J. McManus* of counsel], for Denis O'Leary Cohalan.

*Lawrence N. Condon,* for Charles B. McLaughlin and Edward R. Koch.

*Seymour L. Mork,* for the Democratic county committee of Bronx county.

*S. John Block,* in person.

CotilLo, J. The petitioner is one of five persons duly nominated for the office of justice of the Supreme Court by the Republican judicial district convention for the first district. The last day for filing the certificate of nomination was October 3, 1933, being the fifth Tuesday preceding the general election (Election Law, § 140, subd. 5). The convention was held on October second. On the night of October third the secretary of the convention, having previously prepared the minutes and the certificate of nomination which contained the names of the petitioner and his four associates, met one John Kane, alleged in the moving papers to be secretary to the commissioners of the board of elections, in the office of which the statute (Election Law, § 141) provides that the certificate was to be filed. Kane accepted the papers and assured him that delivery to him was sufficient compliance with the statute. The next morning Kane arrived at the office of the board of elections without the papers, which he had inadvertently left at home. He went back to get them and at twelve-forty-five P. M. returned with them and handed them to the chief clerk of

the board of elections, who refused to receive them on the ground that they should have been in the office before midnight of the preceding day.

The present application for a mandamus is to compel the board of elections to accept the papers and to file them *nunc pro tunc* as of October 3, 1933.

The only disputed question of fact raised by the answering affidavits is the status of John Kane, who it is alleged is only secretary of one of the commissioners of election and not secretary of the board. As the determination of the controversy does not depend upon the solution of this disputed question, the decision will rest upon an agreed state of facts, and may be arrived at without the taking of testimony. Section 140, subdivision 5, the interpretation of which is involved in this case, provides that " A certificate of party nomination for an office to be filled at the time of a general election shall be filed not later than the fifth Tuesday preceding such election."

This provision as to time limit was held to be mandatory in *Matter of Darling* (121 App. Div. 656). The court ruled that the election officers were not authorized to accept a certificate of election after the date limited by the statute, and that it was powerless to grant relief, even though the omission of timely filing was not intentional. In that case the expiring date was October 11, 1907, and the application was made on October 18, 1907, to file the certificate *nunc pro tunc* as of the eleventh. In his dissenting opinion, Mr. Justice CLARKE strongly disagreed with the majority opinion that the court was powerless to grant relief in a proper case. He referred to the following expression by the Court of Appeals in *Matter of Independent Nominations* (186 N. Y. 266): " In accordance with repeated decisions of this court and of the Appellate Division, * * * the Election Law should be construed liberally, to give effect to the will of the people."

While petitioner urges that the principle of liberal construction has been embodied in section 330 of the Election Law since the decision in the *Darling* case, that statutory principle is limited to matters contained in that section, and has no application to matters in section 140. At the same time the general principle of liberal construction as enumerated in the aforementioned dissenting opinion is sufficient to authorize a relaxation of the rigorous and inflexible rule laid down in the majority opinion in the *Darling* case. The Court of Appeals, indeed, in reviewing the result there, applied the principle of liberal construction, and authorized the submission of the question of excusable delay to the sound discretion of the court. The majority *per curiam* opinion must be quoted in

full, to convey its significance in the solution of the question at bar: " *Per Curiam.* Though we regard the statutory requirement as to the time when certificates of nomination should be filed as mandatory, a majority of the court are of the opinion that there may occur accidents and mistakes, causing delay in such filing, from the effects of which the Supreme Court in either branch may, under section 56 of the Election Law, relieve, provided it finds that the delay has not been due to the negligence or fault of the convention making the nomination, or of the party to whom the filing of the certificate was intrusted. (See *Matter of Clark*, 168 N. Y. 427.) But the question in each case, whether there has been excusable default or misfortune, depends upon the particular facts, and the determination of the question rests in the Supreme Court. *In this case, if the Appellate Division of the Supreme Court had deemed it a proper exercise of discretion, the majority of this court think it would have had power to relieve the petitioner, provided, of course, that there were no laches in making the application, and the granting of the application would not involve confusion in preparing the election ballots.* But these matters were in the discretion of the Supreme Court, and with that discretion, reasonably exercised, we feel we have no power to interfere." (*Matter of Darling*, 189 N. Y. 570.)

The italicized passage is of particular interest, because it indicates that if the Appellate Division had chosen to grant the application in the case the higher court would not have disturbed the exercise of its discretion, provided there were no laches and no confusion was involved in the preparation of the election ballots. Concededly, these two negative elements are absent in the instant case, and the only question, therefore, presented for consideration is whether or not the facts are such as to invoke the exercise of the sound discretion of the court to order the filing of the certificate in question. To decide this a preliminary examination of the reasons for the time limits in the statute must be made. The general purpose of the law is thus stated in *Matter of McDonald* (25 Misc. 80): " The time within which certain acts are required to be done under the Election Law is an essential and all important element in the orderly conduct of nominating and electing public officers. To permit a departure from the law in this respect would lead to the greatest confusion and to the subversion of the plain purposes of the law." In the same opinion that decision anticipated the later ruling of the Court of Appeals in the *Darling* case to the effect that in a proper case the court had the power to direct the filing of a certificate *nunc pro tunc*.

Specifically, the first reason for a time limit that suggests itself is the necessity of giving the board of elections adequate time to prepare the ballots or the voting machines for the election. A second reason is given in *Matter of Halpin* (108 App. Div. 271) in the following statement: " As pointed out in *Matter of Cuddeback* [3 App. Div. 103] the legislative intent is that the electors shall have a reasonable opportunity after regular party nominations are made and announced to ascertain the qualifications and fitness of the candidates presented for their suffrages by the respective parties, to enable them if they so determine to place opposition candidates in the field by independent nominations."

A third reason suggests itself readily. The time limit for filing certificates prevents the unreasonable delay of nominations from motives of political maneuvering or jockeying.

Not one of these reasons applies as an obstacle to the granting of relief by the exercise of the sound discretion of the court. All that the representatives of the party could have done to complete the certificate of nomination was done. While section 141 of the Election Law provides that the certificate must be filed at the office of the board of elections within the time limit, the court held in *Matter of Norton* (34 App. Div. 79) that the statute was satisfied by a delivery to the possession of the acting clerk at any time before midnight of the last day for filing, and wherever he may be. Even granting that Kane was not an officially designated representative for purposes of accepting the filing of certificates, nevertheless, there is no practical distinction in accomplishing the purpose of the statute, as distinguished from its strict letter, between filing at eleven-fifty-nine P. M. and filing at the opening of the office of the board the next day. In either event the same amount of time for the inspection of the certificate by the public is available. Actually, through an accident, the certificate was not regularly filed until three hours after the opening of the office. This delay, under the circumstances, could not possibly prejudice any of the purposes of the statute. In any event the mistake of the secretary in thinking that he was duly filing the certificate by handing it to Kane before midnight of October third should not be visited upon the voters of a large political party. As said in *Matter of Norton* (*supra*): " In the present case, it is for the interest of the voters * * * to have an opportunity to vote for the candidates who have been properly selected. Limitations upon the exercise of such right are not favored. The whole scheme of the Election Law at bottom is to secure to the voter the right to vote for the candidate of his choice, and to have the vote thus given honestly counted and returned. This right should not be restricted by the

removal of candidates from a ticket, any more than in preventing the voter from depositing his ballot. Both are entitled to the same measure of protection, and where the statute may be satisfied and both privileges secured by fair construction, it is the duty of the court to adopt such construction. In the present case, in order to secure to the petitioner his full legal right, and to give to the voters the opportunity to vote for the candidates of their choice, we think that however technical may be the meaning which attaches to the word ' file,' it must be held to be satisfied when the certificate is left with the clerk; and that such act satisfied the requirements of the statute as to filing with him."

These impelling reasons, in my mind, are sufficient to invoke the discretion of the court to exercise its undoubted power to direct the filing of the certificate of nomination *nunc pro tunc* as of October third. I know of few rights that are more important to the individual than the right of franchise, and courts should aid as far as possible to facilitate the exercise of that right. The issue involved is one of great public moment. The duty of the People of this State to select the justices of the Supreme Court is a grave responsibility. The thousands of people who were represented in the convention and whose candidates were chosen, are entitled to have the names of their candidates appear on the ballot.

I have carefully considered the argument in opposition that a bad precedent would be established by such a decision, and the mandate of the statutes nulllified. No new precedent is established by the granting of this motion. The court is only exercising a discretion authorized by law. Each new case must rest upon its own facts. The courts will be careful not to grant any application of like character if it contravenes the reasons which prompted the adoption of the statute, if it may cause confusion in the preparation for the election, if it may prejudice the preparation for independent nominations, or if a petitioner has been guilty of laches. No such elements exist here. The motion is granted. Settle order forthwith.