STATE EX REL. AHLGRIMM, Circuit Judge, Petitioner, v. STATE ELECTIONS BOARD, Respondent.

*No docket number. Submitted February 22, 1978.—
Decided March 7, 1978.*
(Also reported in 263 N.W.2d 152.)

586

*John V. Casanova* and *Foley & Capwell* of Racine, for petitioners.

*Bronson C. La Follette,* attorney general, and *John J. Glinski,* assistant attorney general, for respondent.

## PER CURIAM

On February 16, 1978, this court upon the petition of John C. Ahlgrimm issued an order requiring the respondent, the State Elections Board (hereinafter Board), to show cause why a writ of mandamus should not issue ordering and directing the Board to certify the petitioner as a candidate for the office of Circuit Judge for the 21st Judicial Circuit and to place his name on the ballot. for the spring election to be held on April 4, 1978. After a review of the petition and supporting affidavits and the response filed on behalf of the Board, we conclude the petitioner did not comply with the statutory requirements for filing his nomination papers for the office of circuit judge and that therefore the Board properly refused to certify him as a candidate and place his name .on the ballot. Accordingly, we deny the request that this court take original jurisdiction and dismiss the petition.

The following facts appear in the record in this proceeding: From January 2, 1962, until October 31, 1977, petitioner John C. Ahlgrimm served as county judge for Branch 4 of the Racine county court. On November 1, 1977, he was appointed by Acting Governor Martin Schreiber and took office as circuit judge of Branch 1 of the 21st Judicial Circuit to complete the term of Howard Du Rocher who had resigned.

The petitioner, intending to become a candidate for a full term as circuit judge on the 21st Judicial Circuit, contacted the Racine County· Clerk for information regarding the procedure to be followed for filing nomina-

tion papers for the circuit court judgeship. Based on the information given him by the County Clerk and based upon his own reading of the statutes governing nomination papers, the petitioner concluded that because the 21st Judicial Circuit encompassed only Racine County, the proper place to file his nomination papers was in the office of the Racine County Clerk.

On January 9, 1978—eight days prior to the January 17th filing deadline prescribed in sec. 8.10(2), Stats.,[1] —the petitioner filed his nomination papers for the circuit judgeship with the Racine County Clerk. No other candidate has filed nomination papers for the circuit judgeship in Branch 1 of the 21st Judicial Circuit.

The petitioner subsequently learned that the State Elections Board was taking the position that the nomination papers should have been filed with the Board. On February 3, 1978, the petitioner travelled to Madison and petitioned the Board to certify[2] him as a candidate for

---

[1] Section 8.10(2), Stats., provides:

"(2) Nomination papers for offices to be filled at the spring election shall be circulated not sooner than December 15 preceding the election and shall be filed not later than 5 p.m. on the 3rd Tuesday in January."

[2] Section 5.60(1)(b), Stats., prescribes the State Election Board's duties in preparing the spring election ballots and states:

"(b) The board shall certify the candidates' names and designate the official ballot arrangement for candidates for supreme court justice, circuit court judge, county judge when the district comprises more than one county and state superintendant. . . ."

Additionally, section 7.08(2)(a), Stats., requires that the Board:

"(2) . . . (a) As soon as possible after the closing date for filing nomination papers or after the canvass of the primary vote . . . transmit to each county clerk a certified list of all candidates on file in its office for which electors in that county may vote. . . ."

Upon receipt of such list, section 7.10(2), Stats., requires the county clerk to:

"(2) . . . prepare copy for the official ballots immediately upon receipt of the certified list of candidates' names from the board."

the office of Circuit Judge of the 21st Judicial Circuit. On February 15, 1978, the Board refused to certify his candidacy. He thereafter petitioned this court for relief.

Prior to a 1975 amendment, section 8.10(6), Stats., and its precursors specified that nomination papers for circuit judgeships which were to be voted for wholly within one county, as is the case in the 21st Judicial Circuit which encompasses only Racine county, were to be filed in the office of the county clerk. That the Racine County Clerk's office was the proper filing place for nomination papers for candidates for circuit judgeships in the 21st Judicial Circuit was recognized by the Attorney General in a formal opinion issued in 1952. 41 Op. Att'y Gen. 11 (1952). In that opinion, in response to a specific question from the Racine county clerk, the Attorney General directed that candidates for circuit court in all circuits located entirely in one county, were, based on the statutes at that time, required to file their nomination papers in the office of the county clerk.

In 1975, the legislature amended section 8.10(6), Stats., in Ch. 93, L. 1975, sec. 17, with the effective date of October 28, 1975. That statute now provides:

"(6) Nomination papers shall be filed:
"(a) For statewide offices, circuit judgeships, and for county judgeships when the district comprises more than one county, in the office of the board.
"(b) For offices not specified in par. (a) to be voted for wholly within one county and for county supervisor, in the office of the county clerk.
". . ."

According to the petitioner, sec. 8.10(6), Stats., is ambiguous and because sec. 5.01(1),[3] Stats., mandates a

---

[3] Section 5.01(1), Stats., provides:

". . . *Construction of Title II.* Title II shall give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to fully comply with some of its provisions."

liberal construction of the election laws, section 8.10 (6) should be construed as permitting the filing of his nomination papers with the Racine County Clerk.

The Board in its response to the petition for a writ of mandamus contends that section 5.01 (1), Stats., mandating a liberal construction of the election laws, applies only after an election has been held and the will of the electors manifested. *State ex rel. Oaks v. Brown,* 211 Wis. 571, 579, 249 N.W. 50 (1933).

Be that as it may, we conclude no construction of sec. 8.10 (6), Stats., is necessary or appropriate. That section is not ambiguous. The statute requires all candidates for the office of circuit judge, whether or not the circuit is wholly within one county, to file their nomination papers with the State Elections Board. The phrase "when the district comprises more than one county" modifies only the term "county judgeships." The use of a comma after the words "circuit judgeships," provides grammatical support for this conclusion. Furthermore, the descriptive phrase "when the district comprises more than one county" would make no sense modifying each of the three types of candidacies listed in 8.10 (6) (a), Stats., because obviously "statewide office" would comprise more than one county.

Because this statute is not ambiguous, this court need not seek secondary sources of legislative intent in interpreting it. *Department of Revenue v. Dzuibek,* 45 Wis.2d 499, 504, 173 N.W.2d 642 (1970). Where a statute is unambiguous, interpretation is unnecessary. *Young v. Board of Education, Joint Dist. No. 10,* 74 Wis.2d 144, 246 N.W.2d 230 (1976).

However, even assuming resort to secondary sources to determine the legislature's intent in enacting 8.10 (6),

Stats., is necessary and appropriate, the legislature's intent is clearly expressed. The Legislative Reference Bureau's file for Ch. 93, L. 1975, sec. 17, which amended sec. 8.10(6), Stats., as to place of filing nomination papers for circuit judgeships, contains the following explanatory note with respect to the purpose of the amendment, in drafting document LRB–192/5:

"Note: Clarifies that all circuit judges file nomination papers with the Board, but county judges file with the county clerk unless the district includes more than one county."

We conclude section 8.10(6), Stats., has required since October 28, 1975, that all candidates for any circuit court judgeships must file nomination papers in the office of the State Elections Board. Because this statute is unambiguous and because as the explanatory note reveals, the change from the former law was clearly intended, the petitioner's reliance on sec. 990.001(7), Stats., is misplaced. That statute provides:

"(7) *Construction of Revised Statutes.* A revised statute is to be understood in the same sense as the original unless the change in language indicates a different meaning so clearly as to preclude judicial construction. If the revision bill contains a note which says that the meaning of the statute to which the note relates is not changed by the revision, the note is indicative of the legislative intent."

In the instant case, the change in the language of sec. 8.10(6) clearly indicates a different meaning from the earlier statute so as to preclude any contrary judicial construction.

We agree with the Attorney General's assessment of this case as being simply a late filing situation involving a 17-day delinquency on the part of the petitioner in filing

his nomination papers with the Board.[4] Because the petitioner did not file his nomination papers with the Board until February 3, 1978, he did not timely file. If the nomination papers are not timely filed, the proposed candidate is not entitled to have his name printed on the ballot.[5]

Filing deadlines have consistently been treated as mandatory by this court. For example, in *State ex rel. Stearns v. Zimmerman*, 257 Wis. 443, 43 N.W.2d 681 (1950), this court held that where a candidate for the United States Senate did not file his nomination papers in the Secretary of State's Office or present them for filing until after the 5:00 p.m. deadline (he tendered the papers at 5:02 p.m.), he was properly denied a place on the ballot. We reiterated that filing deadlines for nomination papers must be strictly observed. *Id.* at 445. Moreover, this court rejected the candidate's claim that the then statutory counterpart to sec. 5.01(1), Stats., calling

---

[4] Actually the record does not reveal that petitioner has to this date filed any nomination papers with the Board. The assertion is made, however, that petitioner travelled to Madison on February 3, 1978, in an effort to meet with the Board and obtain the Board's certification of his candidacy. It is not necessary to determine whether the petitioner filed or attempted to file his nomination papers with the Board at that time. We will assume for the purposes of this opinion that such attempt was made and rejected by the Board. Nevertheless, such attempt came 17 days after the filing deadline specified in sec. 8.10(2). See fn. 1, supra.

[5] Section 8.10(1), Stats., provides that unless otherwise specified, the general provisions pertaining to nominations at the September primary, apply to nominations for the spring election. There are no specific provisions in the spring election statute indicating the effects of late filing of nomination papers. Therefore, the statute pertaining to the September primary applies. Section 8.15(1) prescribing nominations for the September primary provides in pertinent part:

"(1) . . . Only those candidates for whom nomination papers containing the necessary signatures acquired within the alloted time *and filed before the deadline* shall have their names printed on the official . . . ballot." (emphasis supplied)

for a liberal construction of the election law so as to give effect to the will of the electors notwithstanding informalities or failure to comply with its provisions, required the opposite conclusion. In response to this argument, this court said:

". . . to enlarge the time which the legislature has designated for the filing of nomination papers would be to amend the statute, not to construe it." *Id.* at p. 446.

Similarly, in *State ex rel. Conlin v. Zimmerman,* 245 Wis. 475, 15 N.W.2d 32 (1944), the court also held filing deadlines must be strictly adhered to. In that case, a candidate for governor was denied a place on the ballot because he did not tender his nomination papers for filing until two hours after the statutory deadline. See also 29 C. J. S. *Elections,* sec. 137, and 25 Am. Jur.2d *Elections,* sec. 156, for the general rule that filing deadlines are strictly observed.

The petitioner claims the *Stearns* and *Conlin* cases are inapposite to the instant situation because, as the petitioner views this case, this is not a late filing situation at all. According to the petitioner, he timely filed his nomination papers in the office of the Racine County Clerk. As we understand petitioner's alternative argument, he is claiming that although the papers were filed in what now might be the wrong place, the papers were nevertheless timely filed.

Petitioner claims that although filing deadlines are generally held to be mandatory, often only substantial compliance with statutes governing the place, mode and manner of filing, is required. 29 C. J. S. *Elections,* sec. 114, p. 284.

According to the petitioner, the statute prescribing the place of filing nomination papers is directory because it does not specify that noncompliance is fatal. In *Lanser v. Koconis,* 62 Wis.2d 86, 214 N.W.2d 425 (1974), this court

defined the difference between mandatory and directory provisions of election statutes in the following terms:

"The difference between mandatory and directory provisions of election statutes lies in the consequence of nonobservance: An act done in violation of a mandatory provision is void, whereas an act done in violation of a directory provision, while improper, may nevertheless be valid. Deviations from directory provisions of election statutes are usually termed 'irregularities,' and, as has been shown in the preceding subdivision, such irregularities do not vitiate an election. Statutes giving directions as to the mode and manner of conducting elections will be construed by the courts as directory, unless a noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result, as where the statute merely provides that certain things shall be done in a given manner and time without declaring that conformity to such provisions is essential to the validity of the election." *Id.* at p. 91.

In considering the mandatory versus directory or strict versus liberal construction of election statutes in *Manning v. Young,* 210 Wis. 588, 247 N.W. 61 (1933), this court held that nomination papers, which were not filed on the last day of the statutory period because it was a legal holiday but were filed the next day, were sufficient. The court stated:

"In the construction of laws relating to primaries and elections, it must not be forgotten that the law does not confer the right which is regulated, the right being conferred by the constitution and is often said to be inherent in our form of society. Originally, as a matter of political theory, every citizen had a right to appear at an election as a candidate for any office for which he was qualified. The exercise of this right resulted in the formation of political parties, nominations by convention, and that in turn, for sundry reasons, gave way to nominations by the filing of normination papers. The right regulated is the original right of any qualified person to become a candidate. In the construction of election laws we cannot therefore lose sight of the fact that the regulations imposed are not conditions upon compliance with which the

right comes into being, but are regulations intended merely to regulate the exercise of the right in an orderly way. . . ." *Id.* at 592–93.

In the instant case, in addition to arguing for a liberal conclusion of the statute so as to make the place of filing directory, the petitioner contends the filing of the papers in the office of the county clerk should have been accepted by the Board because the county clerk was but an agent or arm of the state for the purpose of receiving nomination papers.

With respect to this last argument, we conclude the petitioner's position is untenable. There is no direct statutory authority to support his claim that the county clerk is an agent of the state for the purpose of accepting nomination papers. If this were true, the statutes would surely explicitly so state. On the contrary, sec. 8.10(6) (a) specifically requires a candidate for a circuit judgeship to file with the Board. If the petitioner's claim were correct, there would be no need to draw the present careful distinction in the statute with respect to the place of filing. Moreover, the obvious administrative difficulties which would arise if such filing could take place anywhere, clearly suggests that this result was not intended when the election statutes were enacted.

With respect to the petitioner's other argument that this case simply involves filing of his nomination papers in the wrong place and that because there was substantial compliance with the statute, the filing should be held to be sufficient, we conclude that argument also is without merit. The time and place of filing nomination papers cannot be separated. In order to be timely, the papers must be filed in the proper place. If the papers are initially filed in the wrong place, the error must be corrected and the papers filed in the right place within the filing deadline. Consistent with our earlier opinions in

*Stearns* and *Conlin, supra,* we view sec. 8.10 (2) governing the time of filing and sec. 8.10 (6) governing the place of filing nomination papers for circuit judgeships to be mandatory. Failure to timely file the papers in the proper place prevents the candidate's name from being placed on the ballot. See sec. 8.10 (1), Stats., and sec. 8.15, Stats., fn. 5 *supra.* See also, *McGough v. Todd,* 272 N.Y.S.2d 872, 51 Misc.2d 255 (1966), but *cf., Lauer v. Board of Elections,* 266 N.Y.S. 728, 149 Misc. 104 (1933).

Even if the place of filing could be held to be directory so that substantial compliance would be sufficient, the petitioner would still not be entitled to relief. Sec. 8.30 (1), Stats., provides:

"8.30 *Candidates ineligible for ballot placement.* The official or agency with whom nomination papers are required to be filed *may* refuse to place the candidate's name on the ballot:

"(1) If the nomination papers are not prepared, signed and executed, as required under this chapter." (emphasis added)

The use of the word *may* in this statute implies that the Board has discretion in deciding whose name goes on the ballot. The Board may refuse or not refuse to place a candidate's name on the ballot if the papers were not prepared, signed and executed properly. If the *filing* of nomination papers fits within the meaning of "prepared, signed and executed" as used in sec. 8.30 (1), Stats., then indeed, the statutes prescribing the place and time for filing such papers could be said to be directory because the Board has discretion to waive strict compliance. We conclude, however, that filing does not fit within the meaning of "prepared, signed and executed" as used in the statute. Filing is something that is done *with* the nomination papers, whereas, preparing, signing and executing are things that are done *to* nomination papers. Sec. 8.30 (1), Stats., gives the Board discretion to ignore irregularities in the actual preparation of nomi-

nation papers but does not go so far as to permit the Board to ignore untimely or improper filing of such papers.

Besides, if the Board had discretion to ignore an untimely filing, then the petitioner would not be entitled to mandamus from this court. The petitioner asserts the Board met on February 15th and refused to certify his candidacy. Mandamus does not lie to control the manner in which a government body or office exercises statutorily conferred discretion. *State ex rel. Thomas v. State,* 55 Wis.2d 343, 198 N.W.2d 675 (1972) ; see also *Slawek v. Stroh,* 62 Wis.2d 295, 215 N.W.2d 9 (1974).

We view the requirements of sec. 8.10(2), Stats., and sec. 8.10(6), Stats., as being reasonable regulations of the right to be a candidate for public office. These regulations governing the time and place of filing nomination papers must be strictly enforced in order to insure the orderly exercise of such right. *See Manning v. Young, supra,* p. 593. Because the petitioner did not timely file with the State Elections Board his nomination papers for the office of circuit judge, his name cannot appear on the ballot. As unfortunate and regrettable as this result might be, especially in this situation where there will be no candidate for circuit judge in the 21st Judicial Circuit on the ballot, nevertheless, the burden was on the petitioner to properly file. He did not do so.

An order consistent with this opinion has been issued.