CITY OF CHIPPEWA FALLS, Plaintiff-Respondent,

v.

TOWN OF HALLIE, Defendant-Appellant.

Court of Appeals

*No. 99–0832. Submitted on briefs October 4, 1999.—Decided October 19, 1999.*

(Also reported in 604 N.W.2d 300.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Timothy D. Fenner* of *Axley Brynelson, LLP*, of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Paul Gordon* of Chippewa Falls.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. The Town of Hallie appeals from a declaratory judgment granted in favor of the City of Chippewa Falls. The Town contends that the circuit court erred by concluding that a petition for referendum on the issue of annexation had to be circulated by a qualified elector residing within the territory to be annexed. Because § 8.40(2), STATS., mandates

that the petition's circulator reside within the territory to be annexed, we affirm the judgment.

¶ 2. The facts are undisputed. On November 12, 1998, the owners of a portion of real estate located in the Town and adjacent to the City filed a petition for direct annexation pursuant to § 66.021, STATS. On November 17, the City adopted a resolution that indicated that the City's common council had resolved to accept the petition for direct annexation and that the city clerk was directed to notify the town clerk under § 66.021(5)(a), STATS. After the Town received notice of the resolution, a petition for referendum on the issue of annexation was circulated. Consistent with § 66.021(5), the petition for referendum was signed by the requisite number of qualified electors residing in the area proposed for annexation. However, the circulators of the petition for referendum, while residents of the Town, did not reside in the area proposed for annexation.

¶ 3. On December 29, the City was given notice of the petition for referendum and notified that the town board had scheduled an election for January 12, 1999. The City received a copy of the petition on or about January 4, and on January 5, the City's common council adopted Ordinance O–98–48 annexing the real estate into the City. On January 6, the City brought this action for declaratory judgment to have the petition for referendum found invalid for failing to comply with §§ 66.021(5) and 8.40(2), STATS., and to prevent the scheduled referendum based on the invalid petition. The City argued that §§ 66.021(5) and 8.40(2) required that the petition for referendum be circulated by a qualified elector residing within the territory to be annexed. The circuit court agreed, granted declaratory judgment in favor of the City and permanently

enjoined the Town from conducting a referendum election based on the petition. This appeal followed.

■■■■■

¶ 4. The Town contends that the circuit court erred by interpreting §§ 66.021(5) and 8.40(2), STATS., to require that a petition for referendum on the issue of annexation be circulated only by a qualified elector residing within the territory to be annexed. The Town claims that circulators must only be qualified electors of the township, not necessarily of the area to be annexed. The Town's contention presents a question of statutory interpretation, a question of law that we review de novo. *See State v. Kirch*, 222 Wis. 2d 598, 602, 587 N.W.2d 919, 920 (Ct. App. 1998). The goal of statutory interpretation is to determine and give effect to the legislature's intent. *See id.* at 602, 587 N.W.2d at 920–21. We must first look to the statute's plain language and if it is unambiguous, "we are prohibited from looking beyond the unambiguous language used by the legislature." *Id.* at 602, 587 N.W.2d at 921. However, if the statute is ambiguous, "we may look to the history, scope, context, subject matter, and object of the statute to discern legislative intent." *Id.* "Statutory language is ambiguous if reasonably well-informed individuals could differ as to its meaning." *Id.* at 602–03, 587 N.W.2d at 921. Accordingly, we turn to the language of §§ 66.021(5) and 8.40(2).

¶ 5. Section 66.021(5)(a), STATS., provides, in pertinent part, that where, as here, there is notice of a petition for direct annexation:

> [N]o referendum shall be held unless within 30 days after the date of personal service or mailing of the notice . . . a petition *conforming to the requirements of s. 8.40* requesting a referendum is filed with the

town clerk signed by at least 20% of the *electors residing in the area proposed to be annexed.* (Emphasis added.)

Section 66.021(5)(a) unambiguously requires that the petition be signed by electors residing in the area to be annexed. Section 8.40, STATS., governing requirements of the petition itself, provides, in part, the following:

> **(1)** In addition to any other requirements provided by law, each separate sheet of each petition for an election, including a referendum, shall have on the face at the top in boldface print the word "PETITION". Each signer of such a petition shall affix his or her signature to the petition, accompanied by his or her municipality of residence for voting purposes, the street and number, if any, on which the signer resides, and the date of signing.
>
> **(2)** The affidavit of a qualified elector stating his or her residence with street and number, if any, shall appear at the bottom of each separate sheet of each petition specified in sub. (1), stating that the affiant personally circulated the petition and personally obtained each of the signatures; *that the affiant knows that they are electors of the jurisdiction or district in which the petition is circulated*; that the affiant knows that they signed the paper with full knowledge of its content; that the affiant knows their respective residences given; that the affiant knows that each signer signed on the date stated opposite his or her name; *that the affiant resides within the jurisdiction or district in which the petition is circulated*; and that the affiant is aware that falsifying the affidavit is punishable under ss. 12.13(3)(a) and 946.32(1)(a). (Emphasis added.)

¶ 6. Any ambiguity in § 8.40, STATS., arises from its use of the terms "jurisdiction or district." However,

these terms are clarified when read in context and in conjunction with § 66.021(5), STATS. It is undisputed that the signers of the petition for referendum must reside in the area proposed for annexation. *See* § 66.021(5), STATS. The Town argues, however, that the statute does not mandate the same for circulators of the petition. Rather, the Town claims that the circulators may reside anywhere in the Town. We disagree.

¶ 7. Section 66.021(5), STATS., mandates that the petition for referendum be signed by electors residing within the area proposed to be annexed and that the petition conform with the requirements of § 8.40, STATS. Among these requirements is that an affidavit of a "qualified elector" appear at the bottom of each petition circulated. *See* § 8.40(2), STATS. The affidavit must state that the affiant (i.e., the qualified elector) personally circulated and obtained signatures from those whom the affiant knew to be "electors of the jurisdiction or district in which the petition [was] circulated." *See id.* As established under § 66.021(5), a petition for referendum is to be signed only by those residing within the proposed area of annexation. It follows, therefore, that the terms "jurisdiction or district" under § 8.40(2) refer to the proposed area of annexation.

¶ 8. Having established that the terms "jurisdiction or district" refer to the proposed area of annexation, the definition of these terms is carried throughout the remainder of § 8.40(2), STATS. To apply a different definition to the terms "jurisdiction or district," as the Town proposes, would create an inconsistency within the very same paragraph of the statute. We decline to interpret the statute in such a manner. Therefore, when § 8.40(2) requires that the affiant/circulator reside within the "jurisdiction or dis-

trict" in which the petition is circulated, it can only mean that the affiant/circulator must reside within the proposed area of annexation. Because the petition's circulators did not reside in the proposed area of annexation, we affirm the declaratory judgment granted in favor of the City.[1]

¶ 9. The Town argues in the alternative that notwithstanding any alleged failures to comply with the statutory procedures for circulating the petition, the legislature requires that effect be given to the will of the electors. *See* § 5.01(1), STATS. Section 5.01(1) provides: "Except as otherwise provided, chs. 5 to 12 shall be construed to *give effect to the will of the electors*, if that can be ascertained from the proceedings, notwithstanding informality or failure to fully comply with some of their provisions." (Emphasis added.) However, our supreme court has interpreted this statute as applying only after an election has been held and the will of the electors manifested. *See State ex rel. Oaks v. Brown*, 211 Wis. 571, 579, 249 N.W. 50, 53 (1933). This holding remained undisturbed by our supreme court's decision in *State ex. rel. Ahlgrimm v. State Elections Bd.*, 82 Wis. 2d 585, 263 N.W.2d 152 (1978).[2] Accord-

---

[1] In support of its contention that the petition's circulators need not reside in the proposed area of annexation, the Town relies on various holdings from other jurisdictions. Because we interpret the statute, we are not persuaded by authority of other jurisdictions.

[2] In *State ex. rel. Ahlgrimm v. State Elections Bd.*, 82 Wis. 2d 585, 263 N.W.2d 152 (1978), a candidate for circuit judge sought a writ of mandamus directing the State Elections Board to certify him as a candidate for office and to place his name on the spring election ballot. Although the candidate had failed to comply with the statutory requirements for filing his nomina-

ingly, § 5.01(1) is inapplicable to the instant case, as there was no election from which the will of the electors had manifested.

*By the Court.*—Judgment affirmed.

tion papers, he argued that the statute mandating these requirements was ambiguous and further, that § 5.01(1), STATS., mandated a liberal construction of the election laws. *See id.* at 589–90, 263 N.W.2d at 154. The board, in its response to the petition for a writ of mandamus, relied on *State ex. rel. Oaks v. Brown,* 211 Wis. 571, 579, 249 N.W. 50, 53 (1933), for its contention that § 5.01(1), STATS., mandating a liberal construction of the election laws, applied only after an election had been held and the will of the electors manifested. Responding to the board's contention, the court noted, *"[b]e that as it may,* we conclude no construction of [the statute mandating the procedures for filing nomination papers] is necessary or appropriate . . . [as] [t]hat section is not ambiguous." *Ahlgrimm,* 82 Wis. 2d at 590, 263 N.W.2d at 154 (emphasis added).