THE STATE, EX REL. CAMPBELL, *v.* DURBIN ET AL., BOARD OF ELECTIONS OF ALLEN COUNTY.

(No. 954—Decided September 22, 1947.)

*Mr. Anthony J. Bowers* and *Mr. Ernest S. Navarre,* for relator.

*Mr. Hugh S. Jenkins,* attorney general, *Mr. E. G. Schuessler* and *Mr. Paul T. Landis,* prosecuting attorney, for respondents.

BY THE COURT. This is an action in mandamus brought by the state of Ohio on relation of Bruce M. Campbell against Francis W. Durbin, Dewey Fetter,

Aldine Kohli and M. M. Bogart, members of the Board of Elections of Allen County, as respondents, for an order commanding the respondents to permit the relator and all other persons possessing the qualifications of electors of the city of Lima, to register with the respondents so that they may be entitled to vote at the election to be held on October 7, 1947, to nominate candidates for the office of representative in Congress from the fourth congressional district of Ohio, to be voted for at the special election to be held on November 4, 1947, pursuant to writ of election issued by the Governor of the state of Ohio on the 9th day of September 1947, to fill the vacancy in the office of congressman of the district, and at the general election to be held on the last mentioned date.

In his petition, the relator avers his qualifications as an elector of the city of Lima and the refusal of the respondents, on September 17, 1947, to permit him to register as a qualified voter of the city.

In their answer, the respondents admit the qualifications of the relator as an elector of the city, and their refusal to permit him to register as such elector, and allege that such refusal was by reason of, and pursuant to, a written ruling of the Secretary of State of Ohio, delivered to the respondents, bearing date of September 15, 1947, made pursuant to an opinion of the Attorney General of Ohio, No. 2242, dated September 12, 1947, to the effect that the last day for registration for persons living in registration precincts in the congressional district who desired to register in order to vote at either the aforesaid election on October 7, 1947, or at the special election to fill the vacancy in the office of representative in Congress from the district, or in the general election to be held on November 4, 1947, was September 8, 1947.

On the trial of this cause, the writ of election issued by the Governor, the ruling of the Secretary of State, and the opinion of the Attorney General, above referred to, were introduced in evidence, and the attorneys for the parties conceded, and the court took judicial notice of the fact that the law required registration of electors in the cities of Lima and Piqua in the congressional district in order to entitle them to vote at the elections to be held in the district.

Under the admissions in the pleadings, and the instruments introduced in evidence, and the fact conceded by counsel and taken judicial notice of by the court, the relator and all other persons having the qualifications of electors of the city of Lima are entitled to register in order to enable them to vote at each of the elections, unless the ruling of the Secretary of State, based on the opinion of the Attorney General, constitutes a correct statement of the law applicable to registration in such cities.

The pertinent provisions of the General Code governing registration in the city of Lima, as well as the city of Piqua, are contained in Section 4785-39, reading as follows:

"Persons qualified to register or to change their registration may register or change their registration at the office of the board at any time such office is open except twenty-eight days preceding or ten days following a primary or general election, provided that any registered elector who removes from one precinct to another in the same political subdivision after the close of such registration period shall have the right to vote at the next succeeding election in the precinct from which he moved, wherein he was legally registered."

The above section clearly states that persons quali-

fied to do so, "may register * * * at any time * * * except twenty-eight days preceding or ten days following a primary or general election."

It is prescribed by the writ of election issued by the Governor, that the election for the nomination of candidates for the special election to fill the vacancy in the office of representative in Congress is to be held on October 7, 1947, and the special election to fill such vacancy is to be held on November 4, 1947, being the same day as the general election, so that if the election for the nomination of candidates for the special election is a "primary" election within the purview of the laws relating to elections, the relator and other persons having the qualifications of electors would, by the application of the provisions of the above section, be precluded from registering subsequent to September 8, 1947, as the 28-day period preceding October 7, 1947, was September 9, 1947, and the ten-day period following October 7, 1947, will be October 17, 1947, which will fall within the 28-day period next preceding November 4, 1947, the date of the general election.

As the writ of election was not issued by the Governor until September 9, 1947, a holding that the election for the nomination of candidates for the special congressional election was a "primary" within the purview of Section 4785-39, General Code, would have the effect of precluding qualified electors who may have lawfully registered on September 9, 1947, prior to the issuance of the writ of election, from voting at the election for the nomination of candidates for such special election, such special election, and the general election. It would also have the effect of precluding any qualified persons who had not registered prior to September 9, 1947, from voting at any of such elections.

In his opinion, the Attorney General relies upon

certain of the definitive provisions of the act of which Section 4785-39, General Code, is a part, as determinative that the election for the nomination of candidates for the special congressional election is a "primary" within the purview of that section.

Those definitive provisions are contained in the section of the act now designated as Section 4785-3, General Code, and are as follows:

"The terms used in this act and in the statutes relating to elections shall have the meaning herein defined, unless other meaning is clearly apparent in the language or context."

"a. The term 'general election' shall mean any election held on the first Tuesday after the first Monday in November."

"d. The term 'special election' shall mean any election other than a regular state, a regular municipal or primary election."

"e. The term 'primary' or 'primary election' shall mean any election held for the purpose of electing party committees, choosing delegates to a party convention, or nominating candidates to be voted for at an election."

The Attorney General, in his opinion, concludes that under the statutory definition of a "special election" a primary election cannot be regarded as a special election, that, as the statute defines a "primary" or "primary election" as "any election held for the purpose of * * * nominating candidates to be voted for at an election," the election called for October 7, 1947, being called for the purpose of nominating candidates to be voted for at the special election to be held on November 4, 1947, is a "primary" within the purview of Section 4785-39, General Code, and that the limitation on time of registration prescribed by the section applies to the election.

It will be noted, however, that such definitions, by the express terms of Section 4785-3, General Code, are not applicable where "other meaning is clearly apparent in the language or context."

The election to fill the vacancy in the office of representative in Congress was called by the Governor pursuant to the following provision of Section 2, Article I of the United States Constitution, to wit:

"When vacancies happen in the representation from any state, the executive authority thereof shall issue writs of election to fill such vacancies."

It was also called pursuant to the following provisions of the Constitution of Ohio, to wit:

"The election and appointment of all officers, and the filling of all vacancies, not otherwise provided for by this constitution, or the constitution of the United States, shall be made in such manner as may be directed by law." Section 27, Article II.

"All vacancies in other elective offices shall be filled for the unexpired term in such manner as may be prescribed by law." Section 2, Article XVII.

The statutes applicable to such elections, enacted pursuant to the above quoted constitutional provisions, read as follows:

"When a vacancy in the office of representative to congress * * * occurs, the governor, upon satisfactory information thereof, shall issue a writ of election, directing that a special election be held to fill such vacancy in the territory entitled to fill it on a day specified in the writ. Such writ shall be directed to the sheriff or sheriffs within such territory who shall give notice of the time and places of holding such election as in other cases. Such election shall be held and conducted and returns thereof made as in case of a regular election." Section 4829, General Code.

"When a special election is found necessary to fill a vacancy, the date of the primary shall be fixed at the same time · and in the same manner, as that of the election, by the authority calling such special election; which primary shall be held at least fifteen days prior to the time fixed for such special election. Declaration of candidacy and certificates for such primary shall be filed and fees shall be paid at least ten days before the date for holding such special election." Section 4785-97, General Code.

It will be noted that the above quoted portion of Section 2, Article I of the United States Constitution, which is the primary constitutional authority for holding an election to fill a vacancy in the office of representative to Congress, does not expressly authorize any election to nominate candidates to be voted for at an election to fill a vacancy. It will be noted also that Section 4829, General Code, adopted pursuant to the constitutional provisions, does not authorize an election to nominate candidates to be voted for at an election to fill such vacancy, but merely authorizes the issuance of a writ of election to fill the vacancy in the office of representative to Congress in conformity with the express authority conferred on the Governor by the above quoted provisions of Section 2, Article I of the United States Constitution.

It is, therefore, apparent that whatever authority the Legislature had to enact Section 4785-97, General Code, providing for the holding of an election to nominate candidates to be voted for at the special election to fill the vacancy in the office of representative to Congress is implied in the provisions of Section 2, Article I of the United States Constitution; that such election is necessarily incidental to the special election to fill such vacancy; and that such election, being in-

cidental to such special election, is in itself a special election. It is also special in that it differs from other elections, in that the primary authority for calling it is derived from the United States Constitution and that the writ therefor is, under the law, directed to the sheriffs instead of the board of elections.

It is recognized by the Legislature as a special election, in the last sentence of Section 4785-97, General Code, providing that "Declaration of candidacy and certificates for such primary shall be filed and fees shall be paid at least ten days before the date for holding such special election," the filing of such declaration and certificates under the laws of Ohio being conditions precedent to the nomination of candidates at any election.

It, therefore, is clearly apparent from the language and context of the statutes relating to elections, that the election for the nomination of candidates to be voted for at the special congressional election is not a "primary" or "primary election" within the purview of Section 4785-39, General Code, but is a "special primary election" as designated in the writ of election issued by the Governor. Such election not being a "primary" or "primary election," the provisions of Section 4785-39, General Code, limiting the time preceding a "primary" or "general election" in which persons qualified to register or to change their registration may register or change their registration, have no application.

The time limitations of Section 4785-39, General Code, however, do apply to the special election to fill the vacancy in the office of representative in congress, to be held on November 4, 1947, the date of the general election, as under the provisions of Section 4785-3, General Code, the term "general election" compre-

hends any election held on the first Tuesday after the first Monday in November.

Section 1 of Article V of the Constitution of Ohio provides:

"Every citizen of the United States, of the age of twenty-one years, who shall have been a resident of the state one year next preceding the election, and of the county, township, or ward, in which he resides, such time as may be provided by law, shall have the qualifications of an elector, and be entitled to vote at all elections."

The rights conferred by those constitutional provisions are recognized as an essential part of our liberties. The General Assembly, under the grant of legislative power secured to it by the Constitution, has power by statute to provide for the registration of voters, and to direct that all electors must register before being permitted to vote. Such an act, however, to be valid, must be reasonable and impartial and calculated to facilitate and secure the constitutional right of suffrage, and not to subvert or injuriously, unreasonably, or unnecessarily restrain, impair or impede the right. *Daggett* v. *Hudson,* 43 Ohio St., 548, 3 N. E., 538, 54 Am. St. Rep., 832.

The rule applicable to the construction of statutes regulating those rights is that such statutes must be so construed as to insure, rather than defeat, exercise thereof when and where possible. *Manning* v. *Young et al., Bd. of Election Commrs.* (1933), 210 Wis., 588, 247 N. W., 61. The decision in this case is in conformity with this rule.

It is, therefore, ordered, adjudged and decreed that a writ of mandamus be issued commanding the respondents, Francis W. Durbin, Dewey Fetter, Aldine Kohli and M. M. Bogart, members of the Board of

Elections of Allen County, to permit the relator, Bruce M. Campbell, and all other persons who have the qualifications of electors of the city of Lima, to register in order that such persons may qualify to vote at the special primary election to be held on October 7, 1947, and the special election to fill the vacancy in the office of representative to Congress, to be held on November 4, 1947, and the general election to be held on November 4, 1947, such registration to be permitted up to and including October 6, 1947.

*Writ allowed.*

JACKSON, P. J., GUERNSEY and MIDDLETON, JJ., concur.